COMMONWEALTH *vs.* ISADORE LEACH.

SAME *vs.* MORRIS BERKMAN.

SAME *vs.* FRED TARTER.

Suffolk.   Middlesex.   October 9, 1923. — October 16, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & JENNEY, JJ.

*Constitutional Law,* Judiciary. *Jurisdiction. District Court. Superior Court. Practice, Criminal,* Trial before district judge under St. 1923, c. 469, Exceptions. *Intoxicating Liquor. Evidence,* Presumptions and burden of proof.

Every statute is presumed to be within the constitutional power of the Legislature and its enforcement is not to be refused unless clearly and manifestly outside and beyond that power.

St. 1923, c. 469, establishes no new courts, creates no new judges, provides for no new officers, in its utmost sweep utilizes existing courts and employs judges already appointed and commissioned for different service from that hitherto required, and violates no one of the provisions of the Constitution.

A judge of a district court, when sitting in the Superior Court in compliance with a request of the Chief Justice of the Superior Court and under the provisions of St. 1923, c. 469, is not created a judge of the Superior Court for the time being and his jurisdiction over offences is not enlarged.

So far as St. 1923, c. 469, effected a mere enlargement of jurisdiction of those holding commissions as judges of district courts, it was within the scope of the power of the General Court under the provisions of the Constitution and the decisions of this court.

Defendants have no constitutional right to a trial by jury in any particular court so long as the essentials of the trial by jury secured by the Constitution are preserved.

A defendant appealing from a sentence imposed by a district court has no constitutional right to a trial by a jury before a judge of the Superior Court.

G. L. c. 278, § 18, in its constitutional aspect preserved and was intended to preserve a right of trial by jury to defendants appealing from a sentence in a district court: otherwise that section was wholly under the control of the General Court and must be taken to be modified by St. 1923, c. 469.

The effect of St. 1923, c. 469, is that district court judges are empowered, when so called on, to use the machinery of the Superior Court with which to try and dispose of cases within the general jurisdiction of district courts, the trials, sentences and dispositions are in their substance and effect upon the public and upon the defendants the same as if held in the Superior Court, but the judges continue to act as district court judges with the added force given to their judicial conduct by the statute.

A district court judge, in allowing exceptions saved at a trial before him under the provisions of St. 1923, c. 469, should designate himself, " District Court Judge sitting under St. 1923, c. 469."

At the trial of complaints charging a defendant with an illegal sale of intoxicating liquor and with keeping and exposing intoxicating liquor for sale with intent to sell it unlawfully, there was evidence that a sergeant of police, having first made note of the number of each of two pieces of paper money, gave them to a man who later used them in buying intoxicating liquor from the defendant in his shop; that later one of these bills was obtained from a man to whom the defendant had paid it in settlement of an account and the other bill was obtained from the defendant, and that both bills were in possession of the sergeant of police at the trial. The defendant asked for rulings in effect that there was no purchase nor sale of the liquor and no payment therefor and that the whole transaction was a subterfuge. The rulings were refused. *Held*, that, the delivery of intoxicating liquor by the defendant in a place other than a dwelling house being made by the statute *prima facie* evidence of a sale, and there being other ample evidence of a sale, the rulings rightly were refused.

Two COMPLAINTS, received and sworn to in the Municipal Court of the City of Boston on December 7, 1922, and January 8, 1923, respectively, the first charging the defend-

ant Isadore Leach with keeping and exposing intoxicating liquor on December 7 with intent unlawfully to sell the same, and the second charging the same defendant with unlawfully selling intoxicating liquor on January 7, 1923. Also

Two COMPLAINTS, received and sworn to in the Municipal Court of the Brighton District on April 28, 1922, the first charging the defendant Morris Berkman with unlawfully selling intoxicating liquors on that day and the second charging him with unlawfully keeping and exposing intoxicating liquors for sale, with intent unlawfully to sell the same.   Also a

COMPLAINT, received and sworn to in the Third District Court of Eastern Middlesex on July 5, 1923, charging the defendant Fred Tarter with exposing and keeping for sale intoxicating liquors with intent unlawfully to sell the same.

All the defendants were convicted in the respective courts and appealed to the Superior Court.

On August 3, 1923, the Chief Justice of the Superior Court made the following order: " Pursuant to the provisions of chapter 469 of the Acts of the Commonwealth of Massachusetts, in the year one thousand nine hundred and twenty-three, I request you Arthur P. Stone, a Justice of a District Court in the Commonwealth, to sit in the Superior Court and perform all the duties authorized by said act, and have and exercise all the powers as provided therein, beginning on August 3, 1923, to and including the 31st day of December, 1923."

On the same day, the Chief Justice made an order in like terms, requesting of " Jeremiah J. Mahoney a Justice of a District Court in this Commonwealth," that he perform duties of the same description.

The complaints in the first case were tried before *Stone*, J., and a jury, and the defendant was found guilty.   The defendant then filed the following motion, entitled, " Motion to set aside Verdict: "  " Now comes the defendant in the above entitled cause and says he was put to trial before an alleged court and that the jury in said court purported to bring in a verdict of guilty against the defendant;  that said

proceedings before said court were null and void and that the verdict of said jury is of no effect. Wherefore the defendant moves that said verdict be set aside and expunged from the records of said case."

The defendant also filed a "Motion to arrest Judgment" on each complaint on the ground that *Stone*, J., "had no authority to act as a justice of this court and that the proceedings before" him "were irregular and void and that the alleged verdict of said jury is of no force and effect and that said Acts of 1923, Chapter 469, is unconstitutional and void and that this court has no power to enter judgment upon said verdict."

All motions were denied, and the defendant Leach alleged exceptions. The order allowing the exceptions was signed, "Arthur P. Stone, Justice District Court, Sitting in Superior Court."

The Berkman complaints also were tried before *Stone*, J., and a jury. The defendant filed a "Plea to the Jurisdiction" on the ground that *Stone*, J., was "not vested with any authority in law to perform the duties of a justice of the Superior Court." The plea was overruled. Material evidence at the trial is described in the opinion. At the close of the evidence, the defendant asked, among others, for the following rulings:

"1. On all the evidence, the defendant cannot be convicted of making a sale."

"4. On all the evidence, the alleged liquor introduced as evidence and represented to have been purchased by said Sanford, was obtained under a subterfuge and the police department, acting through Sanford, did not pay and did not intend to pay therefor, but intended and did intend to take the two dollars, given as the alleged purchase price, back into their own possession.

"5. The police department, acting through said Sanford, did not in good faith intend to purchase any liquor, or any goods, from the defendant, but through subterfuge and conspiracy intended to get, and did get the defendant's goods without consideration."

The requests were refused. The defendant was found

guilty, and alleged exceptions. The order allowing the bill of exceptions was signed, " Arthur P. Stone, Justice Third District Court, Eastern Middlesex."

The Tarter case was tried before *Mahoney,* J., and a jury, and the defendant was found guilty. The defendant moved for an arrest of judgment on the following two grounds:

" 1. This court has no jurisdiction to impose sentence upon him for that he appealed from a judgment of the Third District Court of Eastern Middlesex to the Superior Court. That the Superior Court is a court of justice established by law held by justices of the Superior Court who are duly appointed and qualified under standing laws as justices of said court, holding office for life; that the session of the court at which this defendant was tried was not presided over by a justice of the Superior Court, but by a justice of the District Court; wherefore, this court has no jurisdiction to sentence him.

" 2. This court has no jurisdiction to impose sentence for that this defendant has not been tried and convicted in the Superior Court."

The motion was denied, and the defendant alleged exceptions, the order allowing which was signed, " Jeremiah J. Mahoney, Presiding Justice."

*H. Bergson,* for Leach.

*J. J. Gaffney,* for Berkman.

*C. W. Rowley,* for Tarter.

*H. P. Fielding,* Assistant District Attorney for Suffolk District, (*T. C. O'Brien,* District Attorney, with him,) for the Commonwealth in the first two cases.

*W. L. Bishop,* Assistant District Attorney of the Northern District, for the Commonwealth in the third case.

RUGG, C.J. The chief question presented in these cases is whether St. 1923, c. 469, is constitutional. That statute, omitting a single section immaterial to the present inquiry, is printed below.* It provides that any judge of a district

---

* " Section 1. A justice of a district court, except the Municipal Court of the City of Boston, shall, at the written request of the Chief Justice of the Superior Court, sit in the Superior Court at the trial or disposition with or without a jury in any part of the Commonwealth of any violation of a by-law,

court, except of the Municipal Court of the City of Boston, on written request by the Chief Justice of the Superior Court, shall sit in the Superior Court for the trial and disposition of designated violations of criminal law. Prosecutions for all these violations of law are within the final jurisdiction of district courts. The formalities prescribed by the statute have been observed by the Chief Justice of the Superior Court and each of the defendants has by verdict of a jury been convicted of a crime within one of the designated classes before a judge of a district court sitting in the Superior Court.

The statute is assailed as contrary to the mandates of the Constitution that "All judicial officers . . . shall be nominated and appointed by the governor, by and with the advice and consent of the council," c. 2, art. 9; that the tenure of all judicial officers shall be expressed in their respective commissions and they shall hold their offices during good behavior, c. 3, art. 1; and that the legislative and judicial departments of government or either of them shall never exercise executive powers, art. 30 of the Declaration of Rights.

---

order, ordinance, rule or regulation made by a city or town or public officer, of any violation of the liquor law, or of any provision of section forty-four of chapter two hundred and seventy-two of the General Laws or of chapter ninety or two hundred and seventy-three of the General Laws, and during the continuance of such request shall have and exercise all the powers and duties which a justice of the Superior Court has and may exercise in the trial and disposition of such cases; provided, that no special justice of a district court shall so sit and that no justice so sitting shall act in a case in which he has either sat or held an inquest in the district court or otherwise has an interest.

"Section 2. The Chief Justice of the Superior Court may arrange for the holding of such sessions for the trial and disposition of such cases and for the attendance of such number of jurors therefor as the interests of justice and the prompt disposition of such cases may in his judgment require. Such sessions may be held simultaneously with other sessions of the Superior Court or at other times in the discretion of the Chief Justice.

"Section 3. When a justice of a district court sits in the Superior Court as above provided, the fact of his holding court and the request of the Chief Justice of the Superior Court shall be entered upon the general records of the court but need not be stated in the record of any case heard by said district court justice."

"Section 5. This act shall not be operative after July first, nineteen hundred and twenty-six."

It becomes necessary to examine the powers conferred by the Constitution upon the General Court in order to determine whether the statute in question goes beyond the limits of those powers and whether it can be harmonized with the provisions upon which the defendants rely.

The general principle is that every statute is presumed to be within the constitutional power of the Legislature and its enforcement is not to be refused unless clearly and manifestly outside and beyond that power. *Perkins* v. *Westwood,* 226 Mass. 268, and cases there collected.

It is provided by c. 1, § 1, art. 3 of the Constitution that " The general court shall forever have full power and authority to erect and constitute judicatories and courts of record, or other courts " for the adjudication of all matters over which the Commonwealth validly can legislate. The only court established by the Constitution is the Supreme Judicial Court. *Walton Lunch Co.* v. *Kearney,* 236 Mass. 310, 317, and cases there collected. The Superior Court and all the district courts have been established from time to time by the legislative department of government pursuant to the power conferred by the Constitution. The jurisdiction of these courts may be " modified, enlarged, diminished or transferred, in the same manner as the jurisdiction of all other courts subordinate to the Supreme Judicial Court." *Russell* v. *Howe,* 12 Gray, 147, 153.

The General Court further is given full power and authority by c. 1, § 1, art. 4 of the Constitution to make " all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, . . . and to name and settle annually, or provide by fixed laws, for the naming and settling all civil officers within said commonwealth; the election and constitution of whom are not hereafter in this form of government otherwise provided for; and to set .forth the several duties, powers, and limits, of the several civil and military officers of this commonwealth . . . ."

As a part of this comprehensive grant of power the legislative department of government may, according to its conceptions of the needs of the public welfare, fix and limit

and change and transfer from one to another the civil or criminal jurisdiction of all such courts. It may abolish existing courts with the exception of the Supreme Judicial Court and erect others in their stead and distribute among them jurisdiction of all justiciable matters in its own wisdom. The history of the courts of the Commonwealth is replete with illustrations of the exercise of this power by the Legislature. *Brien* v. *Commonwealth,* 5 Met. 508. *Dearborn* v. *Ames,* 8 Gray, 1. *Wales* v. *Belcher,* 3 Pick. 508. *Commonwealth* v. *Phillips,* 11 Pick. 28. *Commonwealth* v. *Phelps,* 210 Mass. 78. Power of Legislature to Create and Abolish Courts, by Horace Gray (later Chief Justice of this Commonwealth and a justice of the United States Supreme Court), 21 Law Rep. 65, 73–83.

The amplitude of these grants to the Legislature of power over courts is bounded by the other provisions of the Constitution. Manifestly it would be beyond the scope of legislative authority to attempt to create courts whose judges should not be appointed by the Governor by and with the advice and consent of the Council, c. 2, art. 9; or whose tenure of office should be other than during good behavior, unless sooner removed in the manner provided by the Constitution, to be expressed in their commissions under the great seal of the Commonwealth, c. 3, art. 1; or who should hold offices forbidden to judges by art. 8 of the Amendments; or who should exercise either executive or legislative prerogatives, art. 30 of the Declaration of Rights.

There are numerous statutes now in force whereby the General Court has changed and enlarged the powers and jurisdiction of judges. Sometimes this has been accompanied by enlargement of the jurisdiction of the courts and sometimes without otherwise affecting or modifying the jurisdiction of the courts.

It is provided by G. L. c. 218, § 40, that judges and special justices of the several district courts, except of the Municipal Court of the City of Boston, may perform each other's duties when necessary or convenient. Similar provision exists with reference to judges of probate of the several counties. G. L. c. 217, § 8. The probate courts in the several counties

are separate tribunals, to each of which judges have been appointed by the executive department of the government. G. L. c. 215, § 1; c. 217, §§ 1, 2. The same is true of the several district courts. All have in general limited territorial jurisdiction. When action is taken under these provisions of the statutes as to interchange of duties, the request or designation is to be made by a judge or some officer other than the Governor. Such request or designation is not a commission or appointment. The effect of these provisions is to enlarge by the Legislature the territorial jurisdiction of the several judges and to provide for its exercise in some appropriate way. This constitutes no invasion of the constitutional powers of the executive department of the government. It is a redistribution of some of the existing judicial powers.

Provision was made by U. S. St. of October 3, 1913, c. 18; 38 U. S. Sts. at Large, 203, amending c. 1, § 18 of the Judicial Code, for designation, by the Chief Justice of the United States on request of the senior circuit judge of the second circuit, of district judges from other districts in order to relieve congestion within the second circuit. It was said in *Lamar* v. *United States*, 241 U. S. 103, 118, that " merely to state " the contention that " to assign a judge of one district and one circuit to perform duty in another district of another circuit was in substance to usurp the power of appointment and confirmation vested by the Constitution in the President and Senate . . . suffices to demonstrate its absolute unsoundness."

The constitutionality of G. L. c. 217, § 8, and c. 218, § 40, can hardly be doubted. This goes far toward upholding the validity of the statute now attacked.

See in this connection G. L. c. 211, § 19. *Zeitz* v. *Nickel*, 243 Mass. 516.

Provision was made by St. 1912, c. 649, §§ 8, 9; G. L. c. 231, §§ 108, 109, for an appellate division of the Municipal Court of the City of Boston. No new judges were to be appointed, but the judges to hold the Appellate Division were to be designated from time to time by the Chief Justice of the Municipal Court of the City of Boston from among the

judges of that court. Although numerous cases have come
directly from that division to this court, the constitutionality
of the statute authorizing the Appellate Division has never
been doubted.

There were established three appellate divisions of the
district courts of the Commonwealth outside of the Munici-
pal Court of the City of Boston by St. 1922, c. 532, §§ 8, 9, 10.
The designation of the judges to sit on those appellate divi-
sions was devolved upon the Chief Justice of the Supreme
Judicial Court. Such designations have been made. All
those appellate divisions have performed the judicial duties
reposed in them by said c. 532.

The constitutionality of these two statutes concerning
appellate divisions of the Municipal Court of the City of
Boston and of the other district courts seems to be clear
under the principles elucidated in *Ashley* v. *Three Justices
of the Superior Court,* 228 Mass. 63.

It has been said, by one of the highest eminence in the
judiciary of the Commonwealth and of the nation in the
article to which reference has already been made, 21 Law
Rep. at page 76, touching the appointment of judges and
the establishment of courts, that " The provisions of the
Constitution of the United States hardly differ in substance
from those of the Constitution of Massachusetts," with an
exception not here material. Constitution of the U. S.
art. 2, § 2; art. 3, § 1. Without indulging in a critical
analysis of the two instruments to test this statement in
detail, it may in general be accepted for the purposes of this
decision. Therefore the practice and decisions under that
Constitution are pertinent as illuminating and persuasive,
though not authoritative and binding.

The act of Congress of March 8, 1802 (2 U. S. Sts. at
Large, 132) authorizing the circuit justices to sit in place of
the district judge (compare 1 U. S. Sts. at Large, 74, 75;
2 U. S. Sts. at Large, 90, 98), was held constitutional in
*Stuart* v. *Laird,* 1 Cranch, 299, 309. The act of April 10,
1869 (16 U. S. Sts. at Large, 44) conferring the similar power
on circuit judges was held constitutional in *Wallace* v.
*Loomis,* 97 U. S. 146, 156.

The Circuit Court of Appeals of the United States was created by act of March 3, 1891, c. 517. (26 U. S. Sts. at Large, 826.) It was made a court of record with authority to prescribe a seal and the form of its writs, to establish rules and to exercise an important jurisdiction. By its § 3, now § 120 of the Judicial Code, U. S. St. March 3, 1911, c. 231; 36 U. S. Sts. at Large, 1132, it was provided that one or more district court judges within the circuit should sit in the Circuit Court of Appeals in the absence of other judges. District courts of the United States are courts of superior jurisdiction differing in this respect from territorial courts. *In re Cooper*, 143 U. S. 472, 506. *American Ins. Co.* v. *Canter*, 1 Pet. 511, 546. *McAllister* v. *United States*, 141 U. S. 174. Judges of district courts of the United States therefore would seem not to be inferior officers and hence must be appointed by the President under art. 2, § 2 of the U. S. Const. *McCormick* v. *Sullivant*, 10 Wheat. 192, 199. *Cuddy, petitioner*, 131 U. S. 280, 284. This provision requiring district court judges to sit in the Circuit Court of Appeals appears to have been regarded as constitutional, *In re Claasen*, 140 U. S. 200. Such is the common practice as shown by many decisions of that court. That statute goes much further than the one now under consideration.

The statute here assailed establishes no new courts. It creates no new judges. It provides for no new officers. Its utmost sweep is to utilize existing courts and to employ judges already appointed and commissioned for different service from that hitherto required. It is an adaptation of the present judicial organization to changed conditions. It is apparent from the title and frame of the statute that it was designed to relieve a congestion of criminal cases accumulated and accumulating in the Superior Court. That it was intended to be a temporary measure is apparent from the fact that it will cease by its § 5 to be operative on July 1, 1926.

The district courts of this Commonwealth are courts of record and of superior and general jurisdiction with reference to all matters within their jurisdiction. G. L. c. 218, § 4. In this particular, judges of district courts stand on the same footing as judges of the Superior Court.

The judges of the district courts when sitting in the Superior Court are not created judges of the Superior Court for the time being. They cannot be or become other than judges of district courts according to their respective commissions. The offences which may be tried and the sentences which may be imposed by district court judges sitting in the Superior Court under the statute are those within the original and concurrent jurisdiction of district courts under G. L. c. 218, §§ 26, 27. The jurisdiction over offences is not enlarged. The particular offences charged in the several complaints in the cases at bar of keeping or exposing intoxicating liquor for sale and of unlawfully selling intoxicating liquor are misdemeanors within the jurisdiction of district courts. G. L. c. 274, § 1; c. 138, §§ 2, 83. *Commonwealth* v. *New York Central & Hudson River Railroad,* 206 Mass. 417, 420. The jurisdiction of every district court judge is enlarged by the statute. He is made liable to service if and when request is made as provided in the statute. The potential jurisdiction to try the designated classes of cases was conferred upon all the district court judges when the statute became operative. That was a legislative act. So far as it was a mere enlargement of jurisdiction of those holding commissions as judges of district courts, it was within the scope of the power of the General Court under the provisions of the Constitution and the decisions, to which reference has already been made. Power to hold trials by jury without right of appeal but with right of exceptions hitherto has been conferred upon district courts, although such statutes have been long ago repealed. The constitutionality of such statutes has not been doubted. *Ward* v. *Edmunds,* 110 Mass. 340. Doubtless for reasons of public policy the Legislature did not provide for the summoning of jurors and the holding of jury trials in the district courts as heretofore organized. The Legislature preferred to confer upon district court judges the power, when required by public necessity as declared by the written request of the Chief Justice of the Superior Court, to exercise their functions with the forms of the jury trial and other court accessories by law furnished in the Superior Court. De-

fendants have no constitutional right to a trial by jury in any particular court so long as the essentials of the trial by jury secured by the Constitution are preserved. These defendants had no constitutional right to a trial by jury before a judge of the Superior Court. The provision of G. L. c. 278, § 18, under which each of these defendants appealed from a judgment of a district court to the Superior Court, in its constitutional aspect preserved and was intended to preserve to the defendants a right of trial by jury. That right was accorded to the defendants on the present complaints. Otherwise said § 18 was wholly under the control of the General Court and must be taken to be modified by St. 1923, c. 469.

The effect of the statute is that district court judges are empowered, when so called on, to use the machinery of the Superior Court with which to try and dispose of cases within the general jurisdiction of district courts. The trials, sentences and dispositions are in their substance and effect upon the public and upon the defendants the same as if held in the Superior Court. But the judges continue to act as district court judges with the added force given to their judicial conduct by the statute. All this might indubitably have been accomplished by the Legislature by requiring all the added functions to be performed in their several courts. There is no constitutional objection to enabling them to utilize the appurtenances of the Superior Court to the same end.

The conclusion is that the statute as thus interpreted violates no one of the provisions of the Constitution. It does not invade the province of the executive department of government. It confers no executive functions upon the judicial department of government.

The form of procedure has not been argued. See *Commonwealth* v. *Taber*, 123 Mass. 253; *Ball* v. *United States*, 140 U. S. 118. Without discussing that matter we have preferred to decide the cases upon their merits.

There is variation in the title used by the several district court judges in allowing these exceptions. That is not an

essential matter but the correct designation is " District Court Judge sitting under St. 1923, c. 469."

Further exceptions remain to be considered in the Berkman case. There was evidence that a sergeant of police, having first made note of the number of each, gave two bills to a man who later used those bills in buying intoxicating liquor from the defendant in his shop; and that later one of these bills was obtained from a man to whom the defendant had paid it in settlement of an account and the other bill was obtained from the defendant; and that both bills were in possession of the sergeant of police at the trial. The requests of Berkman to the effect that there was no payment for the liquor and no purchase or sale of the liquor and no payment therefor and that the whole transaction was a subterfuge, were denied rightly. There was ample evidence of a sale by the defendant. The delivery of intoxicating liquor by the defendant in a place other than a dwelling house is made by the statute *prima facie* evidence of a sale. G. L. c. 138, § 59. *Commonwealth* v. *Williams*, 6 Gray, 1. *Commonwealth* v. *Woelz*, 219 Mass. 37, 38. *Friend* v. *Childs Dining Hall Co*. 231 Mass. 65, 68. Even if it be assumed without so deciding that the conduct of the sergeant of police was reprehensible, that did not affect the competency of the evidence or its legal sufficiency to prove a sale. *Commonwealth* v. *Wilkins*, 243 Mass. 356, and cases there collected.

In the Leach case the entry may be, denial of motion to set aside verdict affirmed, exceptions overruled, judgment to stand. In the Tarter case, the entry may be, exceptions overruled, verdict and judgment to stand. In the Berkman case the entry may be, order overruling plea to jurisdiction affirmed and exceptions overruled.

*So ordered.*