## OPINION OF THE JUSTICES TO THE GOVERNOR.

*District Courts,* Special justice.

Under G. L. c. 218, § 6A (*b*) (4), a special justice of a District Court whose certificate of full time service has become effective may become "the first justice" of the court, "the administrative head of the court," under § 6, as amended [887-889]; the clause in § 6A (*b*) (4), limiting the powers of a special justice holding an effective certificate to "the same powers" as a full time justice of a District Court "who is not the administrative head of his court" is intended only to ensure that upon certification a special justice does not exercise the substantial administrative powers possessed under § 6 by one who is then the first justice [889-890].

The phrase in G. L. c. 218, § 6A (*b*) (4), "except as otherwise provided in this section," introducing the grant of powers to a special justice of a District Court whose certificate of full time service has become effective applies only to § 6A (*b*) (3), respecting the assignment powers of the Chief Justice of the District Courts, and does not alter the intent to treat a full time special justice the same as a full time justice. [890-894]

Under the provision of G. L. c. 218, § 6, that "[t]he senior justice [of a District Court] in time of service shall be the first justice of the court," the time of service of a special justice who has filed a certificate of full time service pursuant to § 6A, is measured from the effective date of the certificate. [894-895]

On July 28, 1976, the Justices submitted the following answers to questions propounded to them by the Governor.

To His Excellency, the Governor of the Commonwealth:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in a request dated June 11, 1976, and transmitted to us on the same day.

We recite the facts and provisions of law set out in the request. There are two judicial offices authorized for the District Court of Newton consisting of justice and special justice. G. L. c. 218, § 6. The office of justice is vacant.[1] The

---

[1] Although not recited in the request, we note that the vacancy occurred on February 28, 1976, upon the untimely death of Franklin N. Flaschner, Chief Justice of the District Courts. We further note that the special justice became certified as a full time special justice on March 1, 1976.

individual occupying that of special justice is serving full time, having complied with the certification procedure set out in G. L. c. 218, § 6A. General Laws c. 218, § 6A (*b*), inserted by St. 1975, c. 862, § 6, provides in part that a special justice who has elected to serve full time shall "except as otherwise provided in this section ... have the same powers, duties, rights and privileges ... as a justice of a district court ... who is not the administrative head of his court." General Laws c. 218, § 6, as amended through St. 1975, c. 862, § 5, provides in part that "[t]he senior justice in time of service shall be the first justice of the court." In § 6 and other provisions of law the first justice is granted administrative powers, duties, rights and privileges.

The request indicates that grave doubts exist as to whether the person appointed to fill the vacancy will be the first justice of the court and sets forth the following questions:

"1. May a special justice who serves full-time pursuant to § 6A of c. 218 of the General Laws become the first justice of the court in which he or she serves?

"2. If the answer to Question 1 is in the affirmative, is 'time of service' as referred to in § 6 of c. 218 measured from the effective date of a special justice's certificate of full-time service?"

Upon receipt of the request we issued a notice inviting interested persons to file briefs on or before June 30, 1976. We received briefs from the Governor and from the Special Justices Association. Both argued that the questions should be answered in the affirmative. We agree.

1. Section 6 of G. L. c. 218, as amended through St. 1975, c. 862, § 5, establishes the method for determining who shall be first justice of a District Court. The relevant provision, which appears in the first paragraph, is as follows:

*"The senior justice in time of service shall be the first justice of the court.* Citations, orders of notice, writs, executions and all other processes issued by the clerk

of the court shall bear the teste of the first justice thereof. *The first justice shall be the administrative head of the court,* and without limiting the foregoing, shall appoint temporary clerks, court officers and probation officers, and shall approve the appointments of assistant clerks and of temporary assistant clerks" (emphasis supplied).

Section 6A of G. L. c. 218, sets forth a procedure whereby a special justice of a District Court may become a full time judge by filing with the Chief Justice of the District Courts a certificate indicating that he will devote full time to the duties of his office and will not engage in the practice of law. C. 218, § 6A (*a*). Upon the certificate's taking effect (a determination made by the Chief Justice according to § 6A [*a*]), the special justice becomes subject to certain provisions including the following: "except as otherwise provided in this section *he shall have the same powers, duties, rights and privileges,* including the power to hear and decide civil actions, *as a justice of a district court* who is required to devote full-time to his duties and *who is not the administrative head of his court*" (emphasis supplied). § 6A (*b*) (4). To answer the first question we must determine whether the clause, "who is not the administrative head of his court," was intended to prevent a special justice who files a certificate from becoming first justice of the court to which he was appointed.

Many District Courts have one justice and one special justice. G. L. c. 218, § 6. The justice in each of those courts, under the provisions of § 6, would be the first justice of the court and therefore "the administrative head of the court." Upon the special justice's certificate becoming effective, he acquires "the same powers, duties, rights and privileges" as a full time justice possesses. G. L. c. 218, § 6A (*b*) (4). Thus one interpretation of the last clause in § 6A (*b*) (4), "who is not the administrative head of his court," is that the Legislature wished to make clear that the broad grant of "powers, duties, rights and privileges" was not intended to carry with it the administrative powers, duties,

rights and privileges possessed by the individual holding the position of first justice at the time the special justice's certificate became effective. In other words, the clause may have been intended to avoid any confusion as to who could exercise the substantial administrative powers entrusted to the first justice by § 6. Another interpretation of the final clause in § 6A (*b*) (4) is that the Legislature intended to prevent a full time special justice from ever becoming first justice of his court. Our analysis of the provisions of § 6A and the legislative history of that statute lead us to the conclusion that the former construction was intended.

The language in § 6A (*b*) (4) granting to a full time special justice[2] "the same powers, duties, rights and privileges" as a full time District Court justice manifests an intent to place the office of full time special justice on a par with that of full time justice. Undoubtedly the provision was inserted to remove restrictions imposed by G. L. c. 218, § 41, which confers upon a special justice the powers and duties of a justice but only "so far as to render decisions, make orders, and perform such other acts as he may deem necessary or proper in connection with or relating to matters which have been heard before him." Further indication of the intent to make the two offices equivalent is the declaration in § 6A (*b*) (4) that "the power to hear and decide civil actions" is included in the broad grant of authority to full time special justices. The provision makes clear that full time special justices, like full time justices, would not be subject to the limitations on the authority of special justices to hear and decide civil cases. See G. L. c. 218, § 40.

Other provisions in § 6A evidence an intent to make the office of full time special justice equivalent to that of full time justice. A full time special justice is entitled to the same salary and expense allowances as a full time justice.

---

[2] For ease of reference we have used the term "full-time special justice" to indicate a special justice who serves full time in accordance with the provisions of G. L. c. 218, § 6A.

§ 6A (*b*) (2). He is also entitled to the same vacation and sick leave benefits and, at his election, the same pension rights. § 6A (*d*).

We have not overlooked the introductory language in § 6A (*b*) (4) "except as otherwise provided in this section." However, the only provision to which this general exception applies is § 6A (*b*) (3), which gives to the Chief Justice of the District Courts assignment powers with respect to full time special justices somewhat different from those he possesses with respect to full time justices. See G. L. c. 218, § 77A. This provision does not alter in any material respect the intent to treat a full time special justice the same as a full time justice.

The Legislature's decision to retain the office of special justice rather than to create additional full time judgeships does not manifest an intention to treat full time special justices differently from full time justices. The Legislature has the authority to create new judicial offices although it lacks the power to fill them. *Opinion of the Justices*, 271 Mass. 575, 579-581 (1930). *Commonwealth* v. *Leach*, 246 Mass. 464, 471 (1923). Mass. Const. pt. 2, c. 1, § 1, arts. 3, 4; pt. 2, c. 2, § 1, art. 9. But it did not want to create new judgeships, for it declared in § 6A (*h*) that nothing in § 6A "shall be construed to establish a new judicial position." That the Legislature wished to abolish the office of special justice is clear from § 11 of c. 862, which provides, "Any vacancy in the office of special justice of a district court occurring after February first, nineteen hundred and seventy-six shall not be filled." As shown below, the legislation contemplated the establishment, within a relatively short period of time, of a virtually full time District Court judiciary. To accomplish this goal without creating new judgeships the Legislature decided to retain the office of special justice (phasing it out as vacancies occurred) and to expand the jurisdiction of special justices who elected to sit full time to that of full time justices. This was well within the constitutional powers of the Legislature. *Commonwealth* v. *Leach, supra* at 470-471, 474. Therefore, the fact that the Legislature retained the office of special jus-

tice does not evidence an intent to establish a class of full time special justices separate from full time justices. Inded, an important aim of the legislation appears to have been the creation of a full time judiciary.

While the legislative history of c. 862 sheds little light on the specific issue whether the Legislature intended by the last clause of § 6A (*b*) (4) to keep full time special justices from becoming first justices, it does provide some further insight into the purposes of the legislation.

For over half a century legislators have sought to abolish the office of special justice in the District Courts and to create a full time judiciary. 1974 Senate Doc. No. 1481, at 9. In 1936, a special legislative commission charged with the responsibility of investigating the judicial system recommended that the office of special justice be abolished. 1936 House Doc. No. 1750, at 17. "We are convinced," the commission reported, "that the highest type of judicial system involves the employment of full time judges exclusively, — judges who would be forbidden to practice law but who would receive adequate compensation for their judicial services." *Id.* at 19. The same views have been expressed by other legislators, by Governors, and by the Judicial Council. 1964 House Doc. No. 3450, at 25-26. 1970 House Doc. No. 5733, at 1-3. 1974 Senate Doc. No. 1481, at 9. 1975 Senate Doc. No. 1699, at 2. Forty-fifth Report of the Judicial Council, Pub. Doc. No. 144, 31-32 (1969). Forty-seventh Report of the Judicial Council, Pub. Doc. No. 144, at 21 (1971). However, efforts to meet these goals were unsuccessful until 1975. In that year many bills were filed. While all were designed to phase out the part time special justice the methods offered to accomplish this objective varied. One method was simply to abolish the office of special justice. See 1975 House Bill No. 4643. Another was to create a new office of full time circuit District Court justice to replace the office of special justice. See 1975 Senate Bill No. 830 (which would create one District Court circuit judgeship for each special judgeship that became vacant), and 1975 Senate Doc. No. 1699 (which would create two District Court circuit judgeships for every three

special judgeships that became vacant). A third method was to allow special justices to elect to serve full time and to eliminate the position of special justice prospectively. See 1975 House Bill No. 1945 (which is substantially the same as G. L. c. 218, § 6A). The bills and documents cited, along with seventeen others, were referred to the House Committee on the Judiciary. The committee recommended that 1975 House Bill No. 5658, which followed 1975 House Bill No. 1945, ought to pass. It provided that upon a special justice's certification becoming effective he would be subject to certain provisions, including the provision that "he shall have the same powers, duties, rights and privileges, including the power to hear and decide civil actions, as a justice of a district court who is required to devote full time to his duties and who is not the administrative head of his court." This language is nearly identical to § 6A (b) (4). The bill was referred to the House Committee on Ways and Means, which amended the bill in some respects. 1975 House Bill No. 6816. While the committee retained the provision last quoted, it added the following: "Nothing in this section shall be construed to interfere with the existing administrative powers and duties of a justice, or first justice, of a district court." Id. at § 6. This provision appears in subsection (i) of c. 218, § 6A. Substituted for 1975 House Bill No. 6816 was a nearly identical bill, 1975 House Bill No. 6842, the provisions of which, with amendments immaterial to the issues before us, appear in c. 862, enacted by the Legislature on December 31, 1975, and approved by the Governor on January 8, 1976.

We have discovered nothing in the history of c. 862 to indicate a legislative intent to deprive a full time justice of the right and duty to become first justice. The fact that in 1975 House Bill No. 6816 the Committee on Ways and Means added the last paragraph to the proposed § 6A declaring that nothing in § 6A was to be construed "to interfere with the existing administrative powers and duties of a justice, or first justice, of a district court" is not evidence of such an intent. The subsection appears to have been added for the protection of a judge who occupies the

position of administrative head of the court at the time the special justice becomes certified to serve full time. If the Legislature had intended in § 6A (*b*) (4), which appeared in the bill before the Ways and Means Committee, to prevent a full time special justice from ever becoming first justice, the provision added by the committee would have been useless, for one who could never become administrative head of a court could not interfere with the existing powers of a justice or first justice. The provision added by the committee and which became § 6A (*i*) appears to have been intended to make clear the ambiguous clause at the end of § 6A (*b*) (4).

We have found little else in the legislative history to assist us in determining the meaning of the last clause in § 6A (*b*) (4). However, the history demonstrates an unmistakable intent to phase out the office of special justice and to encourage those occupying the office to elect to devote full time to their judicial responsibilities. This intent finds expression in the many incentives provided in § 6A to induce a special justice to file a certificate. As already mentioned, a special justice who certifies receives the same salary, expense allowances, vacation and sick leave benefits as a full time District Court justice. Although a full time justice who is appointed after January 1, 1975, must contribute seven per cent of his salary to the judges' retirement fund to be entitled to pension benefits, a special justice appointed prior to such date does not become liable for such contribution upon certification. While this result may follow from the provisions of G. L. c. 32, § 65D, and the opinion of this court in *Opinion of the Justices*, 364 Mass. 847 (1973), we think it significant that the Legislature expressly provided that a special justice who certifies "shall not be subject to the provisions of section sixty-five D of chapter thirty-two." § 6A (*d*). Furthermore, the Legislature in § 6A (*d*) gave full time special justices the option of remaining subject to the provisions of G. L. c. 32, § 65B (governing pensions for special justices) or electing to become subject to the provisions of G. L. c. 32, § 65A (governing pensions for District Court

justices appointed prior to January 2, 1975, who had previous service as special justices). Although the Legislature provided that a special justice who certifies may be assigned to sit in courts other than the one to which he was appointed, it directed that he be assigned to sit "as proximate as reasonably practicable to the district court to which he was appointed, consistent with the public interest in the effective administration of justice." § 6A (b) (3). In § 6A (e), the Legislature provided another incentive to encourage certification by declaring that a special justice holding office on January 1, 1976, who has not filed a certificate, shall, after July 1, 1979, be precluded from practicing law.

An important goal of c. 862 then was, through a program of incentives, to induce special justices to elect to serve full time. A construction of the last clause of § 6A (b) (4) which would preclude full time special justices from becoming first justices would run counter to this clearly expressed statutory purpose.

We conclude that the provision in § 6A (b) (4) granting to special justices who certify "the same powers, duties, rights and privileges ... as a justice of a district court ... who is not the administrative head of his court" was not intended to prevent a full time special justice from becoming first justice of the court to which he had been appointed.

We answer the first question, "Yes."

2. Having answered the first question affirmatively, we must address the second question which asks whether "time of service" referred to in G. L. c. 218, § 6, is measured from the effective date of a special justice's certificate of full time service. We think it must be so measured. If "time of service" were measured from the date of appointment as special justice, the situation could arise where a special justice would be senior to the first justice. A serious question would then arise under § 6 as to who was first justice of the court. The Legislature carefully sought to avoid such a problem by providing in § 6A (i)

that nothing in the section would be construed "to interfere with the existing administrative powers and duties of a justice, or first justice, of a district court"; and by providing in § 6A (*b*) (4) that upon certification a special justice would have the same powers, duties, rights and privileges of a full time District Court justice "who is not the administrative head of his court." It follows that "time of service" is measured from the effective date of certification by the special justice.

We answer the second question, "Yes."

> EDWARD F. HENNESSEY
> PAUL C. REARDON
> FRANCIS J. QUIRICO
> ROBERT BRAUCHER
> BENJAMIN KAPLAN
> HERBERT P. WILKINS
> PAUL J. LIACOS