### State v. Fox
*[Cite as 2 AOA 305]*

*Case No. H-89-22*
*Huron County, (6th)*
*Decided March 16, 1990*

*R.C. 2907.02*
*Crim. R. 16(E)(3)*
*Evid. R. 803(2)*

*Mr. Russell V. Leffler, Counsel for Appellant.*

*Mr. Michael R. Fegen, Huron County Prosecuting Attorney, by Mr. Richard E. Grimes, Assistant Prosecuting Attorney, for Appellee.*

HANDWORK, P.J.

This is an appeal of a judgment of the Huron County Court of Common Pleas in which appellant, Keith S. Fox, was convicted of two counts of rape with specifications of force in violation of R.C. 2907.02(A)(1)(b). Appellant was sentenced to two mandatory life sentences to be served concurrently. From that judgment, he timely filed a notice of appeal and assigns as error:

"I. THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL OR A CONTINUANCE WHEN THE STATE INTRODUCED A STATEMENT OF THE DEFENDANT IN REBUTTAL THAT WAS NEVER PROVIDED TO THE DEFENSE UPON DISCOVERY.

"II. THE TRIAL COURT ERRED IN ADMITTING TESTIMONY OF A CHILDREN'S SERVICE WORKER AS AN EXCITED UTTERANCE.

"III. THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO THE ISSUE OF FORCE."

At trial, several facts were established. Kyun Kim, M.D., a urologist, who examined the victim of the alleged rapes, appellant's stepdaughter, Andrea Nicole Fox ("Nicki"), d.o.b. October 3, 1980, on June 26, 1987, noted that there was no evidence of injury at that time to the genital area. James Bruce, M.D., a pediatrician, who performed a gynecological examination of Nicki at the Akron Children's Hospital on August 8, 1988, testified that her hymen was missing and that she had an enlarged vaginal opening of eight millimeters, twice the normal size for a seven year old girl. In Dr. Bruce's opinion, the vagina had been penetrated.

Testimony from Michael Gordon, the principal of Maplehurst Elementary School where Nicki attended the second grade, established that the last day of school was June 2, 1988. Ernest Corpening, owner of a furniture store, testified that appellant had purchased a waterbed on June 9, 1988. Subsequent testimony from Nicki disclosed that the alleged rapes had occurred on the last day of school and when "dad" bought a waterbed. The defendant admitted that he brought a waterbed in June and that during this time period his wife was gone from home for three days; that he was caring for Nicki and his son, Keith, Jr., and that his friends and coworkers, Danny Flager and Michael Sibley, were present and helped him set up the bed. However, he denied ever having engaged in sexual contact with Nicki. Sibley admitted that he had stayed at the Fox home during this time.

Any further necessary facts and recitation of the proceedings below shall be discussed as part of our consideration of the pertinent assignment of error.

In his first assignment of error, appellant contends that the trial court erred by not granting appellant's motion for a mistrial or a continuance. A brief recitation of the events leading to appellant's motion is necessary to the understanding of our disposition of this assignment of error. After indictment, appellant made a written request for discovery. That document not included in the record of this case; however, neither of the parties dispute that fact and an answer to that request is included in the record. The answer lists information supplied by appellee, the state of Ohio, and includes, in part, the "recorded or written statements made by defendant to law enforcement officers" and a "possible" witness list which contains the name of Patrolman Kevin Cashen of the Norwalk Police Department.

Appellant testified in his own defense at trial. Upon cross-examination, the following line of questions was pursued by the prosecution:

"Q. Would you agree with me, the difference between a woman and a child or girl is that, one, it is appropriate to have consent sex with a woman and inappropriate conduct to have sex with a girl? Is that correct?

"A. That is correct.

"Q. Would you have us believe you perceive Nicki as a woman or child?

"A. As a child.

"Q. In Officer Cashen's presence, did you ever refer to Nicki as a seven year old woman?

"A. Yeah. She was talked of, that way.

"Q. That is the way you referred to her?

"A. Um-hum.

"Q. Nicki is not a seven year old woman, is she?

"A. She tried to be.

"Q. It is inappropriate to have sex with Nicki, correct?

"A. That's right."

No objection was made by the defense to this testimony. The prosecution subsequently called Police Officer Cashen as a rebuttal witness. Cashen offered the following testimony:

"Did there come a time you were in the presence of Mr. Fox, after he had been arrested, that he was taken to the hospital for a blood test?

"Yes.

"Did he make any comments to you which at the time you found strange or unusual?

"Yes. We were sitting in the waiting room, waiting to go in and get the test done and I think I had picked up a magazine and was reading it and Mr. Fox was just kind of sitting with his head down, like this. Then he said, I can't believe it. They are accusing me of having sex with that woman since she was four. I thought to myself, I didn't solicit that type of response. I thought to myself, that is odd. Nobody accused him of having sex with anybody since they were four. I thought that was an odd response.

"Did you find this characterization of Nicki as a woman, strange?

"Yeah. I think that is very strange for a seven year old girl. You saw Nicki. She doesn't look anything like a woman.

"There is no doubt in your mind that what he said? He used the noun, woman?

"Correct."

Although the defense did not object to the testimony at the time it was elicited, on cross-examination the defense inquired as to whether the police officer had recorded the defendant's oral statement in his report. Officer Cashen replied that he had. Appellant then moved for a mistrial based upon the state's failure to disclose a summary of a defendant's oral statement as required by Crim. R. 16(B)(1)(a)(ii). However, appellant made no argument other than stating that the disclosure was "somewhat damaging", as to how he was prejudiced by the inability to discover the oral statement. Appellee admitted that the nondisclosure had occurred but asserted that the failure was an oversight. The trial court overruled appellant's motion holding:

"THE COURT: It is a serious offense, however, during the course somewhere, in this trial, there was evidence that he had referred to this girl as a woman. From the testimony of the officer, it was a voluntary statement not made pursuant to any custodial interrogation between the Defendant and the patrolman. I don't want to put that child through this, again. On the other hand, it is an extremely serious offense.

"MR. OGLESBY: Your Honor, the video tape, we could just show that.

"THE COURT: The whole case hinges on the child. I am going to overrule the motion."

After appellant was found guilty, he filed a motion for a new trial based solely upon the nondisclosure of the statement. Appellant's memorandum in support of this motion focused on violations of his Fifth and Sixth Amendment rights at the time of his statement. The court below summarily overruled the motion for a new trial. On appeal, appellant asserts, for the first time, that the statement was prejudicial because it could not amount to an admission of guilt, that is, appellant centers his assertion around that portion of his statement which, he argues, implies that his sexual relationship with Nicki had been ongoing since she was four years old.

Crim. R. 16 provides, in material part:

"(B) Disclosure of evidence by the prosecuting attorney.

"(1) Information subject to disclosure.

"(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:

"* * *

"(ii) Written summaries of any oral statement, or copies thereof, made by the defendant, or co-defendant to a prosecuting attorney or any law enforcement officer;"

Even if Crim. R. 16 is violated, the trial court is vested with the discretion to admit the evidence at its option. Crim. R. 16(E)(3); *State* v. *Parsons* (1983), 6 Ohio St. 3d 442, 445. Thus, no error occurred in the admission of defendant's statement to Officer Cashen absent an abuse of discretion, *i.e.*, a decision reflecting an unconscionable, unreasonable or arbitrary attitude on the part of the trial court. *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157.

Clearly, appellant waived his right to object on appeal to any reference to Nicki as a "woman" by admitting during his own testimony at trial that he had used that term for her. Nevertheless, an analysis, as found in *Parsons, supra*, is employed to determine the significance of prosecutorial violations of the discovery rule. *State* v. *Moore* (1988), 40 Ohio St. 3d 63, 66. Failure to provide discovery amounts to reversible error only when there is a showing that (1) the prosecution's failure to disclose was a willful violation; (2) foreknowledge of the statement would have benefitted the accused in the preparation of his defense; *or* (3) the accused was prejudiced by the admission of the statement. *Parsons, supra*, syllabus.

No evidence was offered below to the contrary; we, therefore, accept the prosecutor's assertion that the nondisclosure of the summary of the appellant's oral statement was inadvertent. Furthermore, discovery of the statement would not have benefitted appellant's defense strategy. The prosecution used the statement to emphasize appellant's alleged view of Nicki as a "woman." The reference to her age was neither a part of the state's case nor reflected in the evidence offered at trial. The evidence presented at trial related only to incidents occurring in the spring and summer of 1988 which formed the basis for the charges of rape. In addition, the record is clear that by the time the disputed evidence was admitted at trial, appellant was aware of the purpose of that evidence, and, though his own testimony had attempted to counter its effects. Although Cashen's testimony may have harmed Fox, its prejudicial effect to appellant's cause has not been demonstrated. *State* v. *Cooper* (1977), 52 Ohio St. 2d 163, 177. Appellant's defense was that he had not sexually abused Nicki Fox in June 1988; that he was in the company of his wife on June 2 and with friends on June 10 or 11; and, apparently, that Nicki had accused "others" of sexual abuse prior to the accusation made against him. The oral statement that "they" were accusing appellant of having sex with Nicki since she was four years old did not undermine that defense or constitute an admission of guilt. Accordingly, we find no abuse of discretion. Appellant's first assignment of error is found not well-taken.

Appellant next argues that Nicki's statements concerning the alleged rapes, as related to Kay Roberson, an investigator for Huron County Children's Services, should not have been admitted because the out-of-court statements do not fall within the hearsay exception set forth in Evid. R. 803(2).

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Hearsay is not admissible unless it falls within one of the exceptions to the hearsay rule. Evid. R. 802. One of the exceptions to the rule is the excited utterance defined in Evid. R. 803(2) as "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In *State* v. *Wallace* (1988), 37 Ohio St. 3d 87, 89, the Supreme Court of Ohio set forth the standard to be applied to determine an excited utterance:

"'(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declarations spontaneous and unreflective,

"'(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

"'(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and

"'(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.' *Potter* v. *Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E. 2d 140, paragraph two of the syllabus (followed and approved in *State* v. *Duncan* [1978], 53 Ohio St. 2d 215, 7 O.O. 3d 380, 373 N.E. 2d 1234, paragraph one of the syllabus)."

In reviewing decisions of trial judges on excited utterance exceptions, the Supreme Court of Ohio has adopted the standard set forth in *Potter* v. *Baker* (1955), 162 Ohio St. 488, at 500:

"'It is elementary that the trial judge is to decide those questions of fact which must be decided in order to determine whether certain evidence is admissible. *** If his decision of those questions of fact, as reflected in his ruling on the admissibility of *** [the] declaration, was

a reasonable decision, an appellate court should not disturb it.'"

In the case before us, appellant contends that Nicki's statements concerning sexual conduct with appellant which allegedly occurred on August 2, 1988, and as related to Kay Roberson on August 3, 1988, could not be termed excited utterances because of the time lapse between the alleged startling event and the out-of-court declaration.

"Lapse of time between the startling event and the out-of-court statement" is not dispositive in the application of Evid. R. 803(2). Rather, the question is whether the declarant is still under the stress of nervous excitement from the event." *State* v. *Boston* (1989), 46 Ohio St. 3d 108, 118, citing *State* v. *Duncan* (1978), 53 Ohio St. 2d 215, 219-222.

See, also, *Wallace, supra*, at 90; *State* v. *Smith* (1986), 34 Ohio App. 3d 180, 190; *State* v. *Wagner* (1986), 30 Ohio App. 3d 261, 263. As applied to the statements of child declarants who have been sexually assaulted, the admissibility of these statements depends upon the unique circumstances of each case. The focus is not on a specific time frame but upon whether the excitement of the assault is still dominant over the child declarant's thought processes and whether the child's statements were unreflective expressions of her belief. *Wallace, supra*, at 93. See, *also, Wagner, supra*, at 264.

The record of the case before us reveals that approximately one day lapsed between the alleged sexual assault on August 2, 1988, and Nicki's interview with Kay Roberson. The incident itself was of a shocking nature, and the child was described as distraught and tearful during this portion of the interview. Taking these into consideration, it is reasonable to find that Nicki was still in a state of excitement at the time of her statement to Roberson.

Appellant also argues that out-of-court statements made by Nicki in a second interview on August 4, 1988, relative to the charged offenses, that is, the sexual assaults on June 2 and June 10 or 11, 1988, could not be admitted as excited utterances because of the lapse of time, form June to August, between the startling events and the statements. These statements, which were viewed by the jury, were entered into evidence by means of a videotaped interview between Nicki and Kay Roberson and upon *cross-examination* of Roberson by the defense. The record discloses that appellant never objected to the admissibility of the videotaped testimony or to Roberson's revelation of Nicki's out-of-court statements. Evid. R. 103(A)(1) requires that a party timely object when allegedly inadmissible evidence is introduced at trial. Failure to timely object and state the specific grounds for that objection precludes a claim of error predicated upon the admissibility of that evidence. Evid. R. 103(A); *Amie* v. *General Motors Corp.* (1980), 69 Ohio App. 2d 11, 14. Such an omission constitutes a waiver of the issue upon review. *State* v. *Williams* (1977), 51 Ohio St. 2d 112, paragraph one of the syllabus, vacated on other grounds (1978), 438 U.S. 911. See, also, *State* v. *Schell* (1984), 13 Ohio App. 3d 313, 319 citing *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41. Accordingly, appellant's second assignment of error is found not well-taken.

Appellant's third assignment of error asserts that the jury verdict was against the manifest weight of the evidence on the issue of force.

R.C. 2907.02 provides, in material part:

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when either of the following apply:

"***

"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of such person.

"***

"(B) Whoever violates this section is guilty of rape, an aggravated felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."

In *State* v. *Eskeridge* (1988), 38 Ohio St. 3d 56, at paragraph one of the syllabus, the Supreme Court of Ohio held:

"1. The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. (*State* v. *Labus* [1921], 102 Ohio St. 26, 38-39, 130 N.E. 161, 164.)"

The court went on to find that a relationship of parental authority coupled with

the youth and vulnerability of children "creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." *Id.*, at 59, citing to *State* v. *Etheridge* (1987), 319 N.C. 34, 352 N.E. 2d 673, 681. In the instant case, Nicki Fox, who was seven years old at the time of the sexual assaults, testified, through the use of drawings of a naked man and a naked woman, that her stepfather had laid on top of her, "stuck this area of his body [his penis] into her body [vagina]," that it hurt, that she was afraid, and that appellant told her he would kill her mom if she told anyone. Medical testimony disclosed that there was an absence of hymen tissue and that the vaginal opening measured twice the normal size for a seven or eight year old girl. Clearly, testimony revealed that Nicki viewed appellant as her "dad," a person who, without maternal assistance, cared for her on a regular basis and represented the only father figure in her life. That father, through his conduct, told the child to do something and expressly ordered her not to tell anyone about it. *State* v. *Fowler* (1985), 27 Ohio App. 3d 149, 154. The foregoing constitutes substantial evidence upon which the jury could reasonably conclude that the element of force had been proven beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169, syllabus. Accordingly, appellant's third assignment of error is found not well-taken.

On consideration whereof, this court finds that Keith S. Fox was not prejudiced nor prevented from having a fair trial, and the judgment of the Huron County Court of Common Pleas is affirmed. Costs of this appeal assessed to appellant.

*Judgment affirmed.*

PETER M. HANDWORK, P.J.
CHARLES D. ABOOD, J.
Concur.

Prior to his death, JUDGE JOHN J. CONNORS, JR., did participate in the decision-making process of this case.