DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Shymomil Byrd appeals from his conviction of rape and assault in the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} In May 2002, Appellant was indicted on one count of rape, in violation of R.C. 2907.02(A)(2), and one count of felonious assault, in violation of R.C. 2903.11(A). After a jury trial, Appellant was found guilty of both rape and assault, a lesser included offense of the felonious assault charge. Appellant was sentenced to a term of ten years incarceration on the conviction for rape and six months on the conviction for assault. At the time of sentencing, the trial court found Appellant to be a sexually oriented offender and advised him of his obligations to register as such.
 {¶ 3} Appellant has timely appealed, asserting four assignments of error. His second and third assignments of error have been consolidated and will be addressed first for ease of analysis.
 II Assignment of Error Number Two
"The trial court erred to the prejudice of appellant in violation of criminal rule 29 article 1 section 10 of the Ohio Constitution and the due process clause of the constitution of the united states when it denied appellant's [motion] for acquittal"
 Assignment of Error Number Three
"The trial court erred to the prejudice of appellant when it entered judgment of conviction, where such judgment was against the manifest weight of the evidence."
 {¶ 4} In his second and third assignments of error, Appellant has argued that his convictions for rape and assault were not supported by the evidence presented at trial and that the verdict was against the manifest weight of the evidence. Specifically, Appellant has argued that the State failed to prove beyond a reasonable doubt that Appellant purposely engaged in sexual conduct with the victim, and that he purposely compelled the victim to submit to sexual conduct by force or threat of force. We disagree.
 {¶ 5} Following a jury trial, Appellant was found guilty of rape in violation of R.C. 2907.02(A)(2), which states in pertinent part:
"(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 6} He was also found guilty of assault, in violation of R.C.2903.13(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."
 {¶ 7} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 8} Review of the sufficiency of the evidence put forth by the State to convict a defendant at trial, or the manifest weight of the evidence put forth at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390. This Court must review the evidence in a light most favorable to the prosecution in order to determine whether the evidence before the trial court was sufficient to sustain a conviction. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Thompkins, 78 Ohio St.3d 386.
 {¶ 9} An appellate court does not view the evidence in the light most favorable to the State when determining if it has met its burden of persuasion. Gulley, supra, at 3. Instead, an appellate court must:
"[R]eview the entire record, weight the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 10} It is the exceptional case where the evidence weighs heavily in favor of the defendant. Id. In State v. Roberts (Sept.17, 1997), 9th Dist. No. 96CA006462, at 4, this Court said:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.)
 {¶ 11} At trial, the victim testified on behalf of the State. She testified that on the evening of April 5, 2002, she and a group of friends began celebrating her birthday by having a birthday party at her friend Stacy Dunford's ("Dunford") house. The victim testified that the party moved to a local bar where the group drank alcoholic beverages and danced, then moved again in the early morning hours of April 6, 2002, to the home of Laura Samples ("Samples") for more of the same. The victim testified that she was acquainted with Appellant because they had attended high school together and he had dated her good friend Samples for a while; he had attended all of the birthday celebrations with the victim and her group of friends. The victim further testified that after the party, Appellant went to bed, on top of the bedcovers, in the spare bedroom of Samples home at approximately 4:30 a.m., and that she went to bed in the same bed, under the bedcovers, not more than thirty minutes later. She then testified that she was awakened by Appellant "putting his arm in my mouth and taking off my pants and — and proceeding to have oral sex with me." She further testified that Appellant choked her, picked her up by the neck and threw her on the bed, penetrated her vaginally, punched her in the face, and threatened to kill her. The victim testified that during the attack, she periodically lost consciousness, but was later able to escape from Appellant by faking an asthma attack. Following her escape from the bedroom, the victim woke up Samples, who had been sleeping downstairs, at which time Samples called police.
 {¶ 12} Samples then testified for the State. She testified that she and Appellant had briefly dated prior to April 5, 2002, and that she brought Appellant to the victim's birthday party as her guest. Samples testified that by approximately 3:30 a.m., the birthday party had moved from a local bar to her home. She further testified that she gave Appellant permission to spend the night at her home, and he went to sleep in her upstairs bedroom. Later in the evening, she testified, she went to sleep in her downstairs bedroom, only to be awakened by the victim "running downstairs, bare naked, jumping up and down on my bed screaming that he's trying to kill me, he's trying to kill me[.]" Samples then testified that Appellant also entered her bedroom, and that upon seeing Appellant, the victim ran from Samples bedroom into the bathroom. Samples further testified that she found the victim in the bathroom in the fetal position, rocking back and forth, seemingly convulsing, and screaming hysterically.
 {¶ 13} The State also called Melanie Fundak, R.N. ("Fundak"), a sexual assault nurse examiner and coordinator of the sexual assault care unit for Lorain County. Fundak testified that on the morning of April 6, 2002, the victim was brought to the Nord Center [Sexual Assault Care Unit] by ambulance, at which point Fundak immediately performed a complete medical forensic examination of her. Fundak further testified that the victim "was crying very hard and sobbing," and her physical examination revealed bruising on the victim's neck and face, red marks on her back, and scratches across her body.[1]
 {¶ 14} The State also called Natasha Blue Johns ("Johns"), the victim's sister, as a witness. Johns testified that she went to see the victim after she was taken to the Nord Center for treatment following the attack, and she observed the victim crying and shaking. Johns also testified to the appearance of bruises and scratches on the victim's head, back, and legs. Johns further testified that the victim resided with her following the attack, and that the victim could not sleep at night, took repeated showers, and barely left her home for at least four months.
 {¶ 15} The State also called Dunford to testify. Dunford testified that while she was driving Appellant across town earlier in the evening of April 5, 2002, Appellant continually insisted on driving her car, to which she refused. Dunford also testified that, while riding in the car, Appellant asked her if her boyfriend performed oral sex on her, to which she refused to answer.
 {¶ 16} Lorain Police Officer Corey Earl ("Earl") also testified for the state. He testified that on April 6, 2002, he responded to a call from his dispatcher of a rape complaint. According to his testimony, he was given a description of the alleged attacker, and soon thereafter observed Appellant, who matched the description of the alleged attacker, walking in the general vicinity of the crime. Earl testified that he briefly stopped Appellant and asked him where he was coming from, at which point Appellant responded that he was walking home from his job located approximately two miles from their immediate location. Earl further testified that he noticed scratches on Appellant's face, so he placed him in the police car and drove him to the scene of the crime. Upon arriving at Samples' home, Earl testified that he observed the victim crying hysterically. According to his testimony, the victim identified Appellant as the individual who had raped her. Appellant was then taken to the Lorain County police station and arrested for rape.
 {¶ 17} Lorain Police Detective Albert Rivera ("Rivera") also testified for the state. According to his testimony, he videotaped the interrogation of Appellant following his arrest for rape at which point Appellant professed his innocence to the crime and agreed to take a polygraph examination.[2] Rivera further testified that he returned to the scene of the crime in an attempt to gather evidence and corroborate Appellant's claim that he and the victim had engaged in consensual sex. Specifically, Rivera testified that Appellant claimed that just before he and the victim were about to engage in consensual sex, he left the upstairs bedroom where the rape occurred in search of a condom. His testimony continued that the Appellant woke up Samples, the owner of the home, and asked her where he might find a condom. According to Rivera's testimony, Appellant claimed that his search for a condom proved that the victim had agreed to have sex with him. Rivera testified that he was unable to corroborate any of Appellant's claims regarding the location of condoms in Samples' home.
 {¶ 18} Fundak was called to testify for the defense, at which point she was asked to clarify the time the victim claimed the rape occurred. Christie Brinkman ("Brinkman"), a nurse employed by the Lorain County Sheriff's Department to examine medical reports, was then called to testify. Brinkman testified that, while in custody, Appellant was examined by a doctor and immediately treated for trichomoniasis and gonnorrhea. Brinkman testified that both diseases were transmitted through sexual intercourse and highly contagious.[3]
 {¶ 19} Viewing the evidence in a light most favorable to the prosecution, this Court concludes that the jury clearly did not lose its way and create a manifest miscarriage of justice when it convicted Appellant of rape and assault. The jury was entitled to believe the State's witnesses and the forensic medical examination. It was equally entitled to disbelieve Appellant's statements made during his videotaped interrogation following his arrest. This Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other. See State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. This is not an exceptional case in which the weight of the evidence warrants a reversal. Appellant's second and third assignments of error are not well taken.
 Assignment of Error Number One
"The trial court erred to appellant's prejudice in violation of thefifth, sixth, and fourteenth amendments to the United States Constitution [and] Article 1 Sections 10 and 16 of the Ohio Constitution by [not] admitting appellant's redacted videotaped statements."
 {¶ 20} In his first assignment of error, Appellant has argued that the trial court's decision to admit only a portion of the videotaped interrogation of Appellant, conducted after he was arrested for rape and while he was in custody, was an abuse of discretion. Specifically, Appellant has argued that the trial court abused its discretion when it determined that statements Appellant made on the videotape offering to take a polygraph examination as a means of proving his innocence were inadmissible. We disagree.
 {¶ 21} As a preliminary matter, we note that the admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. See State v. Allen (1995), 73 Ohio St.3d 626, 633. "This Court will not reverse the trial court's decision to admit or exclude relevant evidence absent an abuse of discretion." State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 32. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) State v. Bresson (1990), 51 Ohio St.3d 123, 129. A reviewing court may not merely substitute its judgment for that of the trial court when applying the abuse of discretion standard. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137-138. citing Berk v. Matthews (1990),53 Ohio St.3d 161, 169.
 {¶ 22} In the case sub judice, Appellant has argued that under Evid.R. 106, statements he made where he expressed his willingness to take a polygraph examination as a means of proving his innocence, and statements he made where he asserted his innocence to the rape should have been admitted into evidence. Appellant has also argued that statements he made on the videotape that were not redacted from the tape lost their meaning because they were taken out of context. He has further argued that the tape, in its redacted form, prejudiced his defense. The State has argued that Appellant's statements expressing his willingness to take a polygraph examination were properly excluded from evidence in accord with Evid.R. 403(A)[4] and State v. Souel (1978),53 Ohio St.2d 123.[5]
 {¶ 23} Evid.R. 402, states that all relevant evidence is admissible:
"except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."
 {¶ 24} "Relevant evidence is any evidence that tends to make a fact at issue more probable or less probable than it would be without that evidence." Evid.R. 401.
 {¶ 25} Evid.R. 106, which serves as a basis for Appellant's appeal to this Court, states that:
"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at the time to introduce any other part or any other writing or recorded statement which is otherwiseadmissible and which ought in fairness to be considered contemporaneously with it." (Emphasis added)
 {¶ 26} Evid.R. 106 is considered one of timing because it allows the adverse party to immediately put the admitted statements into context by permitting him to simultaneously admit the remainder of the writing or recording. See McCormick, Evidence (2 Ed., Cleary Ed. 1972) Section 56. The overriding purpose of the rule is to prevent adverse parties from taking statements out of context and distorting them. State v. Barna
(Nov. 3, 1993), 9th Dist. No 93CA005564, at 7. However, the adverse party's right to admit the remainder of the writing or recording is limited to only that evidence which is otherwise admissible. See Evid.R. 106.
 {¶ 27} In the case at bar, the trial court determined that statements made by Appellant expressing his willingness to take a polygraph examination as a means of proving his innocence were inadmissible. The trial court stated:
"All references as to polygraph [examinations] * * * are being redacted, so I think [Evid.R. 106] was designed to avoid that situation where by only allowing part [of the tape] in[,] you might take that part out of context if you don't play the balance [of the tape]."
 {¶ 28} Appellant objected to the redaction of statements regarding his willingness to take a polygraph examination claiming that the redacted comments were exculpatory in nature and provided vital context for the balance of Appellant's statements. Appellant renewed his objection to the redaction of his statements regarding the polygraph examination when the edited version of the tape was played for the jury.
 {¶ 29} In his brief to this Court, Appellant has argued that:
"[T]he redacted portion of the video tape was [Appellant's] response and rebuttal to the questions posed by [Detective Rivera]. [Appellant] insisted that he was innocent, the he did nothing wrong, the he was not lying, and that he was willing to take a lie detector test in order to prove it. Never in the video did [Appellant] mention the test results of a polygraph or whether or not such a test was ever administered."
 {¶ 30} After careful review of the tape, including the portions redacted at trial, this Court finds that Appellant's characterization of his redacted statements as spontaneous professions of his desire to take a polygraph examination as a means of proving his innocence simply goes too far. We also find little support for Appellant's argument that he was prejudiced by the two redacted statements made regarding his willingness to take polygraph examinations.
 {¶ 31} During the first redacted segment ("segment one") of the tape,[6] Appellant did not speak at all; only Detective Rivera spoke. During segment one, Detective Rivera told Appellant that he would talk to the victim and her friends again, and if he thought they were lying, he would ask them to take a polygraph examination. During the second redacted segment ("segment two") of the tape,[7] Appellant simply agreed to take a polygraph examination at the request of the detective.
 {¶ 32} This Court has held that "[g]enerally, statements concerning a defendant's willingness or unwillingness to take a polygraph test are inadmissible." State v. Wooley (Jan. 30, 1985), 9th Dist. Nos. CA 11620, 11785, at 2, citing State v. Hegel (1964), 9 Ohio App.2d 12. The Ohio Supreme Court has also held that when no polygraph results are admitted, the standards set forth in Souel do not apply. State v. Spirko (April 10, 1991), 59 Ohio St.3d 1, at 18-19. Therefore, the State's argument that Souel controls disposition of the case at bar is misguided.
 {¶ 33} However, it is clear that the law regarding polygraph examinations does not favor the admissibility of test results or statements regarding an individual's willingness or lack of willingness to submit to a test. Assuming without deciding that this instance would favor inclusion, this Court concludes that the decision of the trial court to exclude Appellant's statements regarding his willingness to take a polygraph examination as a means of proving his innocence does not rise to the level of an abuse of discretion. It was within the sound discretion of the trial court to exclude Appellant's statements regarding his willingness to take a polygraph examination. See Allen,73 Ohio St.3d at 633.
 {¶ 34} Accordingly, Appellant's first assignment of error is not well taken.
 Assignment of Error Number Four
"Appellant was deprived of his right to the effective assistance of counsel as guaranteed by the sixth and fourteenth amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 35} In his fourth assignment of error, Appellant has argued that he was deprived of his right to the effective assistance of counsel at trial. Specifically, he has argued that his trial counsel failed to effectively cross-examine the victim and develop independent evidence that would impeach the victim's testimony. We disagree.
 {¶ 36} A properly licensed attorney in Ohio is presumed competent.State v. Smith (1985), 17 Ohio St.3d 98, 100. The burden of proving counsel's ineffectiveness, therefore, is on the defendant. Id. A defendant is denied effective assistance of counsel when his attorney's performance falls below an objective standard of reasonable representation and the defendant is prejudiced as a result. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. To show prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id., at paragraph three of the syllabus; see, also,Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674.
 {¶ 37} Appellant has argued that he was prejudiced by his trial counsel because he ineffectively cross-examined the victim. In his brief to this Court, Appellant argued:
"Likewise, given the fact that the court intended to exclude from evidence statements that counsel felt were exculpatory, it was then incumbent upon counsel in this case upon cross examination [of the victim] to, (1) elicit helpful fact[s] from the witness, and (2) to discredit the witness and the witnesses' testimony, and (3) rehabilitate his client's testimony as best he could."
 {¶ 38} Appellant's first argument appears to assert that facts helpful to Appellant's case existed and were overlooked by trial counsel. However, Appellant has failed to explain what facts were "helpful" to his case. Therefore, Appellant's argument that he was afforded the ineffective assistance of counsel because his trial counsel failed to elicit helpful facts from the victim is unfounded.
 {¶ 39} His second argument presumes that evidence existed that could have impeached the victim's testimony, yet again Appellant has failed to put forth any such evidence to this Court on appeal. However, as discussed in our analysis of Appellant's second and third assignments of error, the victim testified at trial and was cross-examined twice by Appellant's trial counsel in an attempt to discredit her testimony. Therefore, Appellant's argument that he was afforded the ineffective assistance of counsel because his trial counsel failed to discredit the victim's testimony at trial is also unfounded.
 {¶ 40} Lastly, Appellant appears to fault his trial counsel for failure to rehabilitate Appellant's own testimony. However, the only statements made by Appellant that were admitted into evidence were those on the videotaped interrogation of Appellant by Detective Rivera. Such testimony was not sworn testimony at trial and could not therefore, be rehabilitated by further questioning of Appellant since Appellant chose not to testify. If the thrust of Appellant's claim is that his counsel should have inquired further of the victim and other witnesses during cross-examination, then he is essentially questioning the strategic decisions made by his trial counsel. In that regard, the Supreme Court of Ohio has held that:
"Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." State v. Carter (1995), 72 Ohio St.3d 545, 558.
 {¶ 41} Furthermore, this Court has held that counsel functions effectively at trial "inasmuch as he actively participate[s] by cross-examining the State's witnesses." State v. Miller (Dec. 18, 2002), 9th Dist. No. 02CA0034, 2002-Ohio-7001, at ¶ 28. In the case at bar, trial counsel cross-examined all seven of the State's witnesses, and cross-examined the victim twice. This clearly rises to the level of active participation pursuant to Miller, and this Court will not second guess any tactical decision made by counsel at trial. Therefore, Appellant's argument that he was afforded the ineffective assistance of counsel at trial because his trial counsel failed to rehabilitate Appellant's own taped, unsworn testimony while cross-examining the victim is unfounded.
 {¶ 42} Appellant has failed to show that he was prejudiced by counsel's performance at trial, nor has he demonstrated that there exists a reasonable probability that the results of the trial would have been different, absent trial counsel's alleged errors. Thus, counsel's performance did not fall below an objective standard of reasonableness. Appellant's fourth assignment of error is not well taken.
 III {¶ 43} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Baird, P.J. and Carr, J., concur.
[1] Photographs of the physical injuries testified to by Fundak were admitted into evidence as State's Exhibits Nos. 1 through 20. In addition, a copy of Fundak's forensic medical examination report was admitted into evidence as State's Exhibit number 22.
[2] The videotape of the interrogation was admitted into evidence as State's Evidence No. 21.
[3] The forensic medical examination report prepared by Fundak revealed that the victim tested negative for any sexually transmitted diseases.
[4] Evid.R. 403(A) states that: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
[5] The conditions for the admission of polygraph examination results are set for in Souel, 53 Ohio St.2d at 132-133. In Souel, the Ohio Supreme Court adopted explicit conditions governing the admissibility of polygraph examination results. "[T]he parties must first jointly stipulate admissibility and follow certain explicit conditions." State v. Jackson
(1991), 57 Ohio St.3d 29, 37.
[6] Segment one ran from 10:51:53 to 10:52:23 on the videotape.
[7] Segment two ran from 10:53:25 to 10:53:40 on the videotape.