[Cite as *State v. Wampler*, 2016-Ohio-4756.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-15-1025

    Appellee                                       Trial Court No. CR0201401713

v.

Timothy Wampler                                  **DECISION AND JUDGMENT**

    Appellant                                      Decided:  June 30, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant County Prosecuting Attorney, for appellee.

Mollie B. Hojnicki-Mathieson, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Defendant-appellant, Timothy Wampler, appeals the January 30, 2015

judgment of the Lucas County Court of Common Pleas, convicting him of six counts of

rape.  For the reasons that follow, we affirm the trial court's judgment.

## I. Background

**{¶ 2}** Ch.L. and P.L. are the parents of M.H. (male, born in 2004), C.L. (male, born in 2006), N.L. (male, born in 2008), E.L. (female, born in 2011), Z.L. (male, born in 2012), and D.L. (male, born in 2013).[1] On February 16, 2014, Ch.L. entered M.H.'s room and found then three-year-old E.L. under a blanket with M.H. on top of her. She was lying face down and her tights were pulled down; M.H.'s pants were also pulled down and he was trying to insert himself inside of her. Ch.L., horrified, began yelling at M.H. to get out of his house. Ch.L. tended to E.L. then went outside. He returned inside to find M.H. curled up on the floor, crying to P.L. and repeatedly saying, "I'm only doing what Tim told me to do. I'm only doing what Tim showed me to do." Ch.L. called 9-1-1.

**{¶ 3}** "Tim" is Timothy Wampler, the appellant in this case. Wampler is Ch.L.'s cousin and was living with the family in October through December of 2013. In response to Ch.L.'s 9-1-1 call, a Washington Township police officer was dispatched to the home. M.H. reported to the officer that Wampler had inappropriately touched him, C.L., and N.L. The boys were ultimately interviewed at the Child Advocacy Center ("CAC") and underwent sexual assault examinations. The examining physician diagnosed M.H. and C.L. as having been sexually abused, and based on his inability to provide any details beyond that Wampler had done "bad stuff," N.L. was diagnosed as having been *allegedly*

---

[1] Ch.L. is not the biological father of M.H. and C.L.

2.

sexually abused. Wampler was indicted on May 1, 2014, on six counts of rape, violations of R.C. 2907.02(A)(1)(b) and (B).

{¶ 4} The case was tried to a jury on January 12-15, 2015, and the jury returned a verdict of guilty as to all counts. The trial court sentenced Wampler to life in prison without the possibility of parole as to each count, memorialized in a January 30, 2015 judgment entry. Wampler appealed the trial court judgment and he assigns the following errors for our review:

> FIRST ASSIGNMENT OF ERROR: THE EVIDENCE AT APPELLANT'S TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.

> SECOND ASSIGNMENT OF ERROR: APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> THIRD ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED BY ALLOWING IMPROPER EVIDENCE BEFORE THE JURY.

> FOURTH ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS.

> FIFTH ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN FINDING N.L. COMPETENT TO TESTIFY AS A WITNESS.

> SIXTH ASSIGNMENT OF ERROR: APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS

3.

GUARANTEED BY THE UNITED STATES AND OHIO

CONSTITUTIONS.

## II. Law and Analysis

{¶ 5} In his first and second assignments of error, Wampler argues that his convictions were against the sufficiency and manifest weight of the evidence. He claims in his third assignment of error that the trial court improperly allowed the admission of hearsay evidence, character evidence, and irrelevant evidence, and he insists that the admission of this evidence was prejudicial. In his fourth and sixth assignments of error, he contends that the indictment and bill of particulars did not provide adequate notice of the charges against him or protect him from future jeopardy, thus the court erroneously denied his motion to dismiss filed on July 22, 2014, and furthermore, that trial counsel was ineffective for acquiescing to the adequacy of the indictment and bill of particulars. And finally, in his fifth assignment of error, Wampler maintains that the trial court erred in finding N.L. competent to testify.

{¶ 6} We address Wampler's assignments of error out of order.

### A. Competence

{¶ 7} In his fifth assignment of error, Wampler claims that the trial court erred in concluding that N.L., who was six years old at the time of trial, was competent to testify. He contends that N.L.'s responses to the trial judge's questions reveal that N.L. was unable to receive accurate impressions of fact, that he lacked an understanding of truth and falsity, and that he did not fully appreciate his responsibility to be truthful.

4.

**{¶ 8}** Under Evid.R. 601(A), every person is competent to be a witness except "children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." It is well-settled that the trial judge must make preliminary determinations as to the competency of all witnesses, including children. *State v. Clark*, 71 Ohio St.3d 466, 469-70, 644 N.E.2d 331 (1994). He or she must conduct a voir dire examination of a child under ten years old to determine whether he or she is competent to testify. *State v. Frazier*, 61 Ohio St.3d 247, 250-51, 574 N.E.2d 483 (1991). In making that determination, the court must consider "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *Id.* "Because the trial court has the opportunity to observe the child's appearance, manner of responding to questions, general demeanor and ability to relate facts accurately and truthfully, its determination will not be reversed absent an abuse of discretion." *State v. McNeill*, 83 Ohio St.3d 438, 442, 700 N.E.2d 596 (1998), citing *Frazier* at 250-251.

**{¶ 9}** The trial judge conducted a competency hearing on October 10, 2014. In response to the judge's questions, N.L. described the joint birthday party that he shared with his older brother in January and he and his siblings' plans for Halloween. He identified his school and his teacher, and he talked about what he wants to be when he

5.

grows up. He provided the name of the street where he lives and listed all the people that live in the house. He talked about his household chores. And he discussed the difference between telling the truth and telling a lie and explained the consequences for telling lies.

{¶ 10} Wampler is skeptical about N.L.'s ability to receive accurate impressions of fact, to understand truth and falsity, and to appreciate his responsibility to be truthful because (1) N.L. testified that one of his chores is to clean the whole house, (2) he said that when he was two years old, he had to clean his bedroom, (3) he said that he got in trouble when he was two for not cleaning his room, and (4) he testified that he always does his chores without being asked, but then stated that when he was five, he did not do his chores.

{¶ 11} This court has recognized that a competency voir dire must be viewed in its entirety. *State v. Purnell*, 6th Dist. Lucas No. L-92-392, 2000 WL 1298765, *3 (Sept. 15, 2000). In *Purnell*, we surmised that "excessive scrutiny of any communication between an adult and a six year old would yield a list of discrepancies and miscommunications." *Id.* Here, when read as a whole, we find that N.L.'s testimony demonstrated that he was able to receive accurate impressions of fact, that he was able to recall those impressions, that he was able to communicate his observations, that he understood truth versus falsity, and that he appreciated his responsibility to be truthful. We find no abuse of discretion in the trial court's competency determination.

{¶ 12} We find Wampler's fifth assignment of error not well-taken.

6.

**B. Motion to Dismiss and Ineffective Assistance of Counsel**

{¶ 13} In his fourth assignment of error, Wampler challenges the trial court's denial of his pretrial motion to dismiss which was premised on Wampler's claim that the bill of particulars provided by the state was inadequate. In his sixth assignment of error, he claims that his trial attorney was ineffective for conceding the adequacy of the state's amended bill of particulars.

{¶ 14} The indictment in this case alleged six identical counts that read as follows:

THE JURORS OF THE GRAND JURY of the State of Ohio, within and for Lucas County, Ohio, on their oaths, in the name and by the authority of the State of Ohio, do find and present that **TIMOTHY WAMPLER**, on or between the 1st day of October, 2013 through the 31st day of December, 2013, in Lucas County, Ohio, did knowingly engage in sexual conduct with another who was not the spouse of the offender, or who was the spouse of the offender but was living separate and apart from the offender, when the victim was less than thirteen (13) years of age, whether or not the offender knew the age of the other person, and THE JURORS OF THE GRAND JURY further specifically find that the victim was less than ten (10) years of age, in violation of **§2907.02(A)(1)(b) and (B) OF THE OHIO REVISED CODE, RAPE, BEING A FELONY OF THE FIRST DEGREE PUNISHABLE PURSUANT TO §2907.02(B)**,

contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

{¶ 15} On May 22, 2014, Wampler filed a request for a bill of particulars. He claimed that while the allegations in the indictment recited the elements of the offense, they failed to provide adequate notice of the charges and protect him against double jeopardy because they employed only general language and failed to describe specific, identifiable incidents. Wampler acknowledged that there is often some temporal uncertainty when younger victims are involved, but he insisted that the state failed to make a real effort to determine the dates with greater precision.

{¶ 16} In response, the state maintained that dates and times were not required to be specified, the bill of particulars need not provide the accused with specifications of evidence, and a bill of particulars is not required where, as in this case, the state has provided open-file discovery to the defendant. Nevertheless, it provided a bill of particulars that added the following language: "**To wit: Timothy Wampler did knowingly engage in sexual conduct with another, M.H., who was not his spouse and was less than thirteen years of age**."[2] It added this language with respect to each victim, including two counts for each victim.

{¶ 17} On July 22, 2014, Wampler filed a motion to dismiss, complaining that "[t]here is no provided context of time or place, [and] nothing that remotely helps [him]

---

[2] We note that the date range of the offenses identified in the bill of particulars contains an obvious error. It is alleged that the incidents took place "between the 1st day of October 2013 through the 31st day of September 2013."

8.

match identifiable incidents to counts in the indictment." He contended that to constitute "constitutionally sufficient notice, the indictment must have criminal counts which are anchored to distinguishable incidents of alleged conduct." He maintained that the indictment did not protect him against double jeopardy, and he denied that there exists an "open-file discovery" exception to Crim.R. 7.

{¶ 18} On September 15, 2014, the state provided an amended bill of particulars. With respect to all counts, it narrowed the dates of the offenses to October 29, 2013, to December 8, 2013. With respect to Counts 1 and 2, it added: "**To wit: Timothy Wampler did knowingly engage in anal intercourse and fellatio with another, M.H., who was not his spouse and was less than thirteen years of age**." With respect to Counts 3 and 4, it added: "**To wit: Timothy Wampler did knowingly engage in anal intercourse and fellatio with another, C.L., who was not his spouse and was less than thirteen years of age**." And with respect to Counts 5 and 6, it added: "**To wit: Timothy Wampler did knowingly engage in anal intercourse with another, N.L., who was not his spouse and was less than thirteen years of age**." At a September 19, 2014 pretrial proceeding, counsel for Wampler conceded that the amended bill of particulars contained the required specificity. The court agreed and denied Wampler's motion to dismiss.

{¶ 19} Wampler claims that it was error for the trial court to deny his motion to dismiss and that trial counsel was ineffective for stipulating to the adequacy of the amended bill of particulars. He insists that the amended bill of particulars still lacked

9.

"information sufficient to delineate distinguishable incidents of alleged conduct," that he lacked adequate notice of the charges against him, and that he was not protected from future jeopardy.

{¶ 20} "An indictment is sufficient if it (1) contains the elements of the offenses; (2) gives the defendant adequate notice of the charges; and, (3) protects the defendant against double jeopardy." *State v. Adams*, 2014-Ohio-5854, 26 N.E.3d 1283, ¶ 28 (7th Dist.), citing *Russell v. U.S.*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The time and date of the offense is not required to be included in an indictment. *State v. Stefka*, 2012-Ohio-3004, 973 N.E.2d 786, ¶ 50 (7th Dist.). This is especially true in cases involving the sexual abuse of children. In such cases, it is sufficient to set forth a time frame during which the offenses occurred. *Id.*

{¶ 21} Crim.R. 7(E) provides that upon a timely written request or upon court order:

> The prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires.

{¶ 22} "[T]he purpose for giving a bill of particulars is to elucidate or particularize the conduct of the accused, but not to provide the accused with specifications of evidence or to serve as a substitute for discovery." (Internal citations and quotations omitted.)

10.

*State v. Barrett*, 8th Dist. Cuyahoga No. 89918, 2008-Ohio-2370, ¶ 16. It is not intended to take the place of formal discovery. *Id.*

{¶ 23} In arguing that the indictment, as supplemented by the amended bill of particulars, did not provide adequate notice or protect against jeopardy, Wampler relies on *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), where the Sixth Circuit found that the 40-count indictment was constitutionally defective because each count was identically-worded and failed to distinguish the factual bases of the charges. However, "[c]hallenges based on *Valentine* have been rejected where the testimony and/or a bill of particulars provided sufficient differentiation among the counts of sexual abuse." *State v. Artz*, 2015-Ohio-5291, --N.E.3d--, ¶ 34 (2d Dist.).

{¶ 24} Here, the time frame in the amended bill of particulars was narrow—an approximate six-week window. The counts were separated out by child. And the counts specified the manner of penetration (anal intercourse and fellatio as to M.H. and C.L.; anal intercourse as to N.L.). In addition to this, "[e]ven if [a] bill of particulars is insufficient in itself, the defendant must show that lack of knowledge of certain facts required to be placed in the bill of particulars prejudiced his ability to fairly defend himself." *State v. Donkers*, 170 Ohio App.3d 509, 2007-Ohio-1557, 867 N.E.2d 903, ¶ 140 (11th Dist.). Wampler fails to explain how he was prejudiced here, and, in fact, the record suggests that there was no prejudice to Wampler. The record indicates (1) that the state agreed to provide witnesses' statements to defense counsel pursuant to a protective order, (2) defense counsel told the court at a pretrial that "everybody knows what the

anticipated evidence is or isn't," and (3) defense counsel was able to provide to his retained expert psychologist police reports, the recorded interviews of the victims, reports from children's services, and hospital records, all of which provided specificity about the victims' allegations.

{¶ 25} Because we conclude that the bill of particulars provided sufficient specificity and that Wampler was not prejudiced by any purported insufficiency in the bill of particulars, we find no error in the trial court's denial of Wampler's motion to dismiss. We also find that trial counsel was not ineffective in acquiescing to the adequacy of the indictment and bill of particulars.

{¶ 26} We find Wampler's fourth and sixth assignments of error not well-taken.

### C. Improper Evidence

{¶ 27} In his third assignment of error, Wampler challenges a number of the trial court's evidentiary rulings. He breaks those challenges into the following categories: hearsay evidence, character evidence, and irrelevant evidence. We address each category in turn.

### I. Hearsay

{¶ 28} Wampler claims that the trial court erred when it allowed Ch.L. and P.L. to testify about out-of-court statements made by M.H., C.L., and N.L. He also contends that the court erred because it allowed the state to play the recorded interviews of the children.

{¶ 29} With respect to Ch.L. and P.L.'s testimony, the state insists that the children's statements to law enforcement officers qualify as excited utterances under

12.

Evid.R. 803(2). It also maintains that admission of the statements was harmless because they mirrored properly-admitted trial testimony. With respect to the recorded interviews, the state counters that Daniel Swerdlow-Freed, Ph.D., Wampler's expert psychologist, placed the interviews at issue when he criticized the manner in which the interviews were conducted. And again, the state argues that even if admission of the tapes was error, it was harmless because the children testified at trial.

{¶ 30} A trial court has broad discretion concerning the admission of evidence and its rulings on such matters will not be disturbed absent an abuse of discretion. *State v. Valsadi*, 6th Dist. Wood No. WD-09-064, 2010-Ohio-5030, ¶ 40. An abuse of discretion is more than an error in judgment or mistake of law. "Abuse of discretion" connotes that the court's attitude is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 31} The first instance of hearsay identified by Wampler involved Ch.L.'s description of what M.H. told the officer who responded to Ch.L.'s 9-1-1 call. Ch.L. testified:

> Q: [Ch.L.], I asked you about what your son had said to the police officer regarding others. Was there any other people that he had mentioned?
>
> A: Yes.
>
> Q: Who?
>
> A: He had mentioned his younger brother [C.L.].

13.

* * *

Q: And what did he mention about [C.L.]?

* * *

A: He had mentioned that Tim had done the same things - - he had witnessed Tim doing the same things to [C.L.].

Q: Did he say what that you recall?

A: No, not that I recall.

Q: And what did he say about [N.L.]?

A: That he had also touched [N.L.].

{¶ 32} The next instance identified by Wampler is the following testimony by P.L.:

Q: And what did [M.H.] tell the officer?

A: [M.H.] told the officer that Tim had touched him, and the officer went into more details as to if [M.H.] had his clothes on or off, and [M.H.] said that there were times that Tim touched him through his clothes and with his clothes off. He asked him where in my house did it take place, and [M.H.] said everywhere, and he pointed to different rooms. He mostly pointed to my love seat that was sitting inside the house, the same love seat that Tim had slept on. And told that he also watched him do it to his other brothers.

* * *

Q: Did [C.L.] eventually tell the officer what happened?

A: Yes, he did.

Q: And what did he say?

A: He said he had it in his mouth, and the officer asked what did you have in his - - or what did he have in your mouth, and [C.L.] said his pee-pee, and the officer asked him other questions as far as was he touched, where was he touched, clothes on, clothes off, and [C.L.] answered them that he was touched in his genital area and clothes were on and clothes were off as well.

Q: And then [N.L.] got confronted?

A: Yes, [N.L.] did.

Q: And when [N.L.] - - and were you present for that?

A: Yes, I was.

* * *

A: The officer asked him again just like he asked the other two boys was he touched by the defendant, and he said, yes, and he said that he was touched, and [N.L.] based his abuse mostly inside of the bedroom that he said there was a lot of times that Tim came inside the bedroom while he was underneath the blanket and he would reach his hand under and touch, and his clothes would be off at that point.

**{¶ 33}** Evid.R. 803(2) provides that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The Ohio Supreme Court in *State v. Taylor*, 66 Ohio St.3d 295, 300, 612 N.E.2d 316 (1993), explained the justification for this hearsay exception:

> Reactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense. Accordingly, Rule 803(2) assumes that excited utterances are not flawed by lapses of memory or risks of insincerity. *Id.*, citing 1 Weissenberger's Ohio Evidence (1992), Section 803.16.

**{¶ 34}** While courts are reluctant to find a statement to be an "excited utterance" when a long period of time has elapsed between the event and the statement, "[t]here is no *per se* amount of time after which a statement can no longer be considered to be an excited utterance." *Id.* at 303; *State v. Duncan*, 53 Ohio St.2d 215, 220, 373 N.E.2d 1234 (1978) "[T]he question is whether the declarant is still under the stress of nervous excitement from the event." *State v. Fox*, 66 Ohio App.3d 481, 489, 585 N.E.2d 561 (6th Dist.1990). The Ohio Supreme Court has upheld the admission of statements made by children who were sexually assaulted even after a substantial lapse of time. It has done

16.

so because "children are likely to remain in a state of nervous excitement longer than would an adult," and because of its recognition that young children possess "limited reflective powers." *Taylor* at 304. The "[i]nability to fully reflect makes it likely that the statements are trustworthy." *Id.*

{¶ 35} In *State v. Kincaid*, 9th Dist. Lorain Nos. 94CA005942, 94CA005945, 1995 WL 608407, *4 (Oct. 18, 1995), the court found statements of a six-year-old child to be "excited utterances" despite the fact that the statements were made months after she had been sexually abused. In *State v. Ames*, 12th Dist. Butler No. CA2000-02-024, 2001 WL 649734, *5-6 (June 11, 2001), the court permitted testimony about statements made by the child-victim approximately two months after the sexual abuse occurred. And in *State v. Stipek*, 7th Dist. Belmont No. 92-B-59, 1995 WL 152488, *1 (Mar. 30, 1995), the court permitted testimony about statements made by the 16-year-old victim four-to-six weeks after the sexual abuse had occurred. In addition to this, courts have held that the event producing the excitement may be "a subsequent event that caused the 'stress of excitement' of the earlier sexual assault to reoccur." *State v. Butcher*, 170 Ohio App.3d 52, 2007-Ohio-118, 866 N.E.2d 13, ¶ 33 (11th Dist.).

{¶ 36} "A reviewing court should give the trial court wide discretion when the trial court decides that statements made by a child-victim about sexually abusive acts qualify as excited utterances." (Citations omitted.) *Ames* at *5. The court must look to the facts and circumstances of the particular case in determining "whether the time between an exciting event and the exclamation of the declarant is sufficient to be deemed

an excited utterance." *State v. List*, 9th Dist. Summit No. 17295, 1996 WL 221899, *2 (May 1, 1996), citing *State v. Duncan*, 53 Ohio St.2d 215, 219, 373 N.E.2d 1234 (1978).

{¶ 37} Here, Ch.L. and P.L. described a chaotic and highly stressful scene. Ch.L. walked in on M.H. with his pants pulled down trying to insert himself into three-year-old E.L. Ch.L. testified that he started screaming, "get the fuck out of my house. [M.H.] get the fuck out." According to P.L., "the whole house just came to a halt." Ch.L. stormed out of the house and returned to find M.H. lying in fetal position on the floor, crying to his mother and telling her how he was doing what Wampler had done and what Wampler had shown him. That's when Ch.L. called the police. Although the statements at issue were made approximately two months after the abuse ended, the circumstances as described lead us to conclude that the trial court did not abuse its discretion in admitting the statements under Evid.R. 803(2).

{¶ 38} Turning to the admission of the videotaped interviews of the children, Dr. Swerdlow-Freed testified about the protocol for interviewing children who are alleged to have been abused. On direct examination, he opined that the forensic interviewer from the CAC made a number of mistakes in interviewing M.H., C.L., and N.L. by (1) failing to establish ground rules with the children, (2) making suggestive prompts in seeking information, (3) exhibiting interviewer bias, and (4) failing to ask open-ended questions. Dr. Swerdlow-Freed concluded that because of the nature and pervasiveness of the interviewer's mistakes, it was unlikely that she had obtained a reliable account from the

18.

children. His report—where specific questions and answers from the interview were cited to illustrate his criticisms— was admitted into evidence.

{¶ 39} In light of these criticisms, the state maintains that Dr. Swerdlow-Freed placed the interviews at issue and, accordingly, the recordings were properly played for the jury in their entirety under Evid.R. 106. Evid.R. 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it.

The purpose of Evid.R. 106 is to "prevent one party from taking statements out of context and distorting them." *State v. Byrd*, 9th Dist. Lorain No. 03CA008230, 2003-Ohio-7168, ¶ 26. It "'contemplates a very high degree of discretion to be exercised by the trial judge.'" *State v. Arrington*, 12th Dist. Clinton No. CA2012-02-002, 2012-Ohio-5009, ¶ 12, quoting Weissenberger, *Weissenberger's Ohio Evidence Treatise*, Section 106.1, 49 (2011).

{¶ 40} Here, Wampler offered into evidence a report from Dr. Swerdlow-Freed that recited a number of the interviewer's questions and the children's answers without providing the context of those questions and answers. He also specifically concluded that due to improper technique, the interviewer elicited an inaccurate report from the children. The state was entitled to show the jury the recordings in their entirety so that it could

19.

properly evaluate the conclusions reached by Dr. Swerdlow-Freed.  We find no abuse of discretion in the trial court's admission of the recorded interviews.

## 2.  Character Evidence

{¶ 41} Wampler also claims that the trial court erred when it allowed the state to offer evidence (1) that in 2008, Wampler had been accused of sexual abuse, and (2) that Wampler used his cell phone to access pornographic websites.  He claims that this evidence was offered solely to show a propensity to commit the crime and to prove that he acted in conformity with his character.

{¶ 42} With respect to the 2008 allegation of abuse, the state claims that Wampler was properly questioned about the allegations because it was probative of his truthfulness.  Specifically, Wampler acknowledged on cross-examination that he told a Lucas County Children's Services ("LCCS") worker in 2014 that he had never been accused of sexual abuse.  When the state questioned the accuracy of that statement, Wampler claimed that he had only recently learned that he had been accused of sexual abuse in 2008.  Over Wampler's objection, the court allowed this line of questioning which ultimately ended with Wampler insisting that he only recently learned that he had been accused in 2008.

{¶ 43} "Evid.R. 608(B) provides that a witness may, in the court's discretion, be questioned on cross-examination as to specific instances of a witness's conduct '* * * if clearly probative of truthfulness or untruthfulness * * *.'  However, the weight of authority is clear that the examiner is then 'stuck' with the responses given by the witness

on cross-examination." *State v. Strobel*, 51 Ohio App.3d 31, 36, 554 N.E.2d 916 (3d Dist.1988).

{¶ 44} Here, the state had reason to believe that Wampler had been dishonest during his interview with LCCS. Wampler denied that he had been dishonest, he briefly explained his position, and the state ceased its questioning on this topic. We find no abuse of discretion in the trial court's decision to allow the state to engage in this line of inquiry.

{¶ 45} With respect to evidence about pornography, the state called Toledo Police Detective David Morford to testify about data retrieved from Wampler's phone. He testified that there was one pornographic image on Wampler's phone and that various pornographic websites had been visited through the phone. Wampler claims that the state offered this evidence to show that "he must have acted in conformity with his character and committed Rape." The state counters that M.H. testified at trial that Wampler showed him a pornographic movie on his phone. It explains that its expert testified that exposing a child to matters of a sexual nature is a way that abusers "groom" or desensitize their victim in an effort to condition the child to accept the abuse and to refrain from reporting it. The pornography was relevant to this theory. We agree with the state that evidence of the pornographic image and the viewing of pornographic websites from Wampler's cell phone were admitted for purposes other than simply to prove conduct in conformity with Wampler's character.

21.

### 3. Relevance

**{¶ 46}** Wampler also claims that the trial court allowed the admission of irrelevant evidence when it permitted the state's expert, Dr. Schlievert, to testify as to "grooming" as it relates to sex offenses, and that the court erred in allowing the state to question Dr. Swerdlow-Freed about the mental health diagnosis of pedophilia. Even if not irrelevant, Wampler claims that the evidence was admitted in violation of Evid.R. 403 because the probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. He insists that the admission of the foregoing evidence was not harmless.

**{¶ 47}** As to Dr. Schlievert's testimony about grooming, the state urges that because M.H. testified that Wampler had shown him a pornographic movie, it was appropriate for the court to allow the state to elicit testimony from Dr. Schlievert about different ways that abusers "groom" their victims, including by exposing them to pornographic images as a way of desensitizing them to matters of a sexual nature. Wampler counters that one instance of exposing M.H. to pornographic images does not rise to a level of a "progressive stepwise situation," as described by Dr. Schlievert.

**{¶ 48}** We find no abuse of discretion in the trial court's decision to admit this testimony. For one, the viewing of pornographic images on Wampler's phone was not the only example that Dr. Schlievert gave of grooming. For instance, he also cited as an example of grooming Wampler's assurances to M.H. that everything was alright and that anal intercourse would become less painful with time. And Dr. Schlievert explained that

22.

there was no "cookbook pattern" method of grooming. In any event, defense counsel cross-examined Dr. Schlievert and he conceded that a number of typical grooming behaviors did not appear in this case.

{¶ 49} With respect to questions asked of Dr. Swerdlow-Freed about pedophilia, Wampler contends that he was never diagnosed as being a pedophile, thus testimony concerning the DSM-IV and DSM-V criteria for pedophilia was irrelevant. The state counters (1) that its questions about pedophilia focused on victim behavior, such as delayed disclosure, (2) that defense counsel agreed that the questioning was relevant as it pertained to victim behavior, and (3) the questioning was limited in scope, focusing only on factors that might prevent disclosure by the child, such as threats and attentiveness to gain the loyalty of the child. We agree with the state that the questioning was very limited in scope, was limited to victim behavior, and was, therefore relevant.

{¶ 50} Finally, we reject Wampler's contention that the prejudicial effect of this evidence outweighed its probative value.

{¶ 51} We find Wampler's third assignment of error not well-taken.

### D. Sufficiency and Manifest Weight of the Evidence

{¶ 52} In his first assignment of error, Wampler claims that the evidence was legally insufficient to support his convictions, and in his second assignment of error, he claims that his convictions were against the manifest weight of the evidence.

{¶ 53} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a

23.

challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

**{¶ 54}** When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins at* 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 55}** We begin with Wampler's claim that the evidence was insufficient to sustain his convictions on six counts of rape. He argues that (1) there was no physical evidence to support the children's claims, (2) there were no eyewitnesses, (3) the only

24.

evidence was the testimony of M.H. and C.L., (4) N.L. testified at trial that he could not remember what happened, (5) the children did not report the abuse until almost two months after he moved out, (6) the opinions of the state's expert were based solely on the children's statements, (7) the children's statements are insufficient to establish beyond a reasonable doubt that Wampler engaged in sexual conduct with them, and (8) the defense expert testified that the children's interviews were not properly conducted. He also claims that the events as established at trial are not credible.

{¶ 56} According to Wampler, the evidence at trial established that the family's home was small. M.H., C.L., and N.L. shared a bedroom, and their bedroom did not have a door—a blanket hung where the door would be. Ch.L. and P.L. slept with their door open and P.L. testified that she could hear what transpired in the home. The family also owned two Pomeranian dogs and those dogs barked when the children played rough or when people walked through the home at night. Wampler claims that despite the family living in close quarters and the presence of dogs, neither Ch.L., or P.L., nor anyone else in the home ever heard anything strange or walked in on anything inappropriate. Wampler insists he was never left alone with only one child at a time and that P.L. was home both day and evening hours unless she was running errands or taking the children to doctors' appointments. Based on these facts, Wampler maintains that it is implausible that he could have raped the children.

**{¶ 57}** In this assignment of error, Wampler is essentially challenging the credibility of the witnesses. We do not weigh credibility on a claim of legal insufficiency. But even under a manifest-weight standard, we find no error here.

**{¶ 58}** First, according to the evidence presented, Wampler raped the boys in front of each other. So to say that no one in the home ever heard anything strange or walked in on anything inappropriate is directly contrary to the evidence. Second, "[t]here is no requirement, statutory or otherwise, that a rape victim's testimony must be corroborated as a condition precedent to conviction." *State v. Reinhardt*, 10th Dist. 04AP-116, 2004-Ohio-6443, ¶ 29. "[T]he testimony of a rape victim, if believed, is sufficient to support each element of rape." (Internal citations omitted.) *Id.* In addition, "corroborating physical evidence is unnecessary in a rape case." *State v. Birt*, 2013-Ohio-1379, 5 N.E.3d 1000, ¶ 48 (12th Dist.).

**{¶ 59}** Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. Here, the jury observed the witnesses' testimony, weighed the evidence, resolved any inconsistencies in the testimony, considered the totality of the evidence, and found Wampler guilty. We find no error in its conclusion.

26.

{¶ 60} Wampler contends that even if the court finds that there was sufficient evidence beyond a reasonable doubt, the evidence was insufficient to establish that the inappropriate touching satisfied the definition of sexual conduct as it relates to N.L. because "[t]he only statement in the record as to what N.L. allegedly reported was that appellant put his penis *at* his butt, not *in* his butt." He maintains that for anal intercourse to occur there must be some evidence of insertion; contact with the buttocks alone is insufficient.

{¶ 61} When questioned by the CAC interviewer, N.L. reported anal penetration:

Q: Where did he put his penis?

A: My butt.

* * *

Q: He only put his penis in your butt?

A: [Nodded affirmatively.]

* * *

Q: How many times do you think it happened?

A: A lot.

{¶ 62} But even setting this aside, N.L.'s brother, C.L., witnessed Wampler anally penetrate N.L. C.L. testified:

Q: Okay. Let's talk about [N.L.]. Did you see anything with [N.L.]?

27.

A: I seen the same things with [N.L.] I didn't know how many times he did it with [N.L.] because I wasn't in the room some of the times.

Q: How many times do you think you were in the room?

A: One or two times.

Q: And what did you see him do to [N.L.]?

A: Put his front private in [N.L.'s] back private and put his front private in [N.L.'s] mouth.

{¶ 63} Thus, contrary to Wampler's assertions, there was sufficient evidence of anal penetration of N.L.

{¶ 64} We find Wampler's first and second assignments of error not well-taken.

## III. Conclusion

{¶ 65} We find each of Wampler's six assignments of error not well-taken, and affirm the January 30, 2015 judgment of the Lucas County Court of Common Pleas. Wampler is ordered to pay the costs of this appeal in accordance with App.R. 24.

Judgment affirmed.

28.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.      _____
              JUDGE

Stephen A. Yarbrough, J.     
           _____
James D. Jensen, P.J.       JUDGE
CONCUR.

           _____
              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.